## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
## CASE NO. 0:14-cv-61978-JIC

CHRISTOPHER W. LEGG )
Individually and on behalf of all others similarly )
situated, )
  )
               Plaintiff, )
  )
        v. )
  )
SPIRIT AIRLINES, INC., a Delaware )
corporation, )
  )
           Defendant. )
  )
  )

## PLAINTIFF'S AMENDED MOTION AND MEMORANDUM
## OF LAW IN SUPPORT OF AMENDED MOTION FOR CLASS CERTIFICATION

Plaintiff, CHRISTOPHER LEGG, hereby submits this amended motion and memorandum of law for class certification.[1] For the reasons stated herein, Plaintiff respectfully asks this Court to enter an Order certifying this case as a class action.

## I.     Introduction.

This is a textbook case for class treatment. The proposed class has thousands of people with the same small claim for statutory damages, each person's claim raises the same material issues, the case covers a manageable two-year time period, and there is no difficulty identifying the class members because the defendant, an airline, is required to track the identifying information for the passengers it subjected to the illegal conduct at issue.

---

[1] Plaintiff's initial motion for class certification (ECF#4) was just a placeholder filed to prevent Defendant from trying to moot or "pick off" Plaintiff as a class representative by offering to settle only his individual claim. The placeholder motion was never briefed or ruled upon and, by the filing of this amended motion, Plaintiff hereby deems the placeholder motion withdrawn.

This case arose because Defendant Spirit repeatedly committed the same violation of the same anti-identity theft provision of the Fair and Accurate Credit Transactions Act ("FACTA"). Specifically, Spirit allowed its computerized airport kiosks to print credit and debit card transaction receipts revealing more than five digits of cardholders' debit and credit card numbers.

Plaintiff is one such cardholder. On multiple occasions when he bought services at one of Spirit's computerized airport kiosks, the kiosk printed a receipt that revealed more than the last five digits of his credit card number.

This is a widespread practice. From some point since August 2012 through at least August 2014, Spirit airport kiosks throughout the U.S. printed transaction receipts that revealed more than the last five digits of thousands of cardholders' debit and credit card numbers.

This practice also violates FACTA's unambiguous requirements. FACTA expressly bars any merchant from printing debit or credit card transaction receipts that reveal the card expiration date or more than the last five digits of the card number. 15 U.S.C. §1681c(g).

Moreover, Spirit engaged in this practice despite being aware of FACTA's requirements. In addition to extensive publicity about FACTA during the years before and after the law went into effect, in 2010 Spirit was sued in the Southern District of Florida for violating the very same FACTA provision at issue here.

Accordingly, Plaintiff brought this lawsuit to stop Spirit's current FACTA violations, deter future violations, and enforce Plaintiff's and the proposed class members' rights. To that end, Plaintiff seeks an order from the Court certifying the proposed class of individuals for whom, like Plaintiff, Spirit printed a debit or credit card receipt that reveals more than the last five digits of the individual's card number. The class easily meets the requirements for class certification set by Federal Rule of Civil Procedure 23. This motion should be granted.

**II.     The Law and Facts at Issue.**

**A.     FACTA's "Truncation" Requirement.**

FACTA was passed by Congress and signed into law by President George W. Bush in 2003. (ECF#1, ¶6). One of FACTA's primary purposes is to reduce identity theft. *Redman v. Radioshack Corp.*, 768 F.3d 622, 639 (7th Cir. 2014) ("identity theft is a serious problem, and FACTA is a serious congressional effort to combat it.")

To accomplish this goal, FACTA requires merchants to redact certain information an identity thief might use from all debit and credit card transaction receipts; in particular, the card expiration date and most of the account number. *Redman*, 768 F.3d at 626 ("the less information the receipt contains the less likely is an identity thief who happens to come upon the receipt to be able to figure out the cardholder's full account information.") Specifically, FACTA states that:

> (g) Truncation of credit card and debit card numbers
>
> (1) In general. Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

15 U.S.C. §1681c(g)(1). This provision is commonly known as the "truncation requirement."

Given the simplicity of this requirement, as well as the inherent commonality of claims that arise when a merchant violates it on a systematic basis (like here), and the small potential damages available to each class member, FACTA truncation cases are commonly certified for class treatment. *See*, *e.g.*, *Bush v. Calloway Consol. Group River City, Inc.*, No. 10-cv-841, 2012 U.S. Dist. LEXIS 40450 at *33 (M.D. Fla. Mar. 26, 2012) ("Courts routinely find class resolution superior in consumer protection actions, including those brought pursuant to FACTA."); *In re Toys "R" Us – Delaware, Inc. – Fair and Accurate Credit Trans. Act (FACTA)*

*Litig.*, 300 F.R.D. 347, 376 (C.D. Cal. 2013) ("The vast majority of courts outside this district have similarly found that common questions predominate in FACTA class actions.")[2]

**B.     The Truncation Requirement Is Well-Established.**

Spirit had years to learn about and comply with the truncation requirement before it went into effect. Although FACTA was enacted in 2003, merchants were not obligated to comply with the truncation requirement before December 4, 2006. 15 U.S.C. §1681c(g)(3).

The truncation requirement was highly-publicized before its effective date. For example, on March 6, 2003, the CEO of Visa USA announced:

> an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether…. The first phase of this new policy goes into effect July 1, 2003 for all new terminals….

(ECF#1, ¶11, *quoting PR Newswire*, "Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft; Visa CEO Announces New Initiative at Press Conference With Sen. Dianne Feinstein" (March 6, 2003)). Likewise, within 24 hours after the VISA announcement, MasterCard and American Express announced they were imposing similar requirements. (ECF#1, ¶12).

Thereafter, VISA, Mastercard and American Express began to contractually require merchants to comply with the truncation requirement. (*Id.*, ¶13) For example, the August 12,

---

[2] Examples of the numerous other decisions ruling that class certification is proper in FACTA truncation cases include *Velasco v. Sogro, Inc.*, No. 08 C 244, 2014 U.S. Dist. LEXIS 104047 at *11-*12 (E.D. Wisc. July 30, 2014); *Rogers v. Khatra Petro, Inc.*, 08-cv-294, 2010 U.S. Dist. LEXIS 103599 at *2 (N.D. Ind. Sept. 29, 2010); *Miller-Huggins v. Mario's Butcher Shop, Inc.*, No. 09-3774, 2010 U.S. Dist. LEXIS 16493 at *14 (N.D. Ill. Feb. 22, 2010); *Shurland v. Bacci Café & Pizzeria on Ogden, Inc.*, 259 F.R.D. 151, 161 (N.D. Ill. 2009); *Harris v. Best Buy Co., Inc.*, 254 F.R.D. 82, 90 (N.D. Ill. 2008); *Redmon v. Uncle Julio's of Illinois, Inc.*, 249 F.R.D. 290, 293 (N.D. Ill. 2008); *Meehan v. Buffalo Wild Wings, Inc.*, 249 F.R.D. 284, 288 (N.D. Ill. 2008); and *Matthews v. United Retail, Inc.*, 248 F.R.D. 210, 217 (N.D. Ill. 2008).

2006 edition of "Rules for Visa Merchants" (p.62), which is distributed to and binding upon all merchants that accept VISA cards, expressly provides that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all." (ECF#1, ¶14).

The truncation requirement made news again in 2008 after numerous merchants were sued for violating the "expiration date" element of the truncation requirement. *See Bateman v. Am. Multi-Cinema*, 623 F.3d 708, 717 (9th Cir. 2010). Congress addressed this situation by passing a "Clarification Act" to absolve violations that had occurred *before* June 3, 2008. *Id.* Importantly, however, the Clarification Act did *not* eliminate or otherwise absolve any violation of the truncation requirement going forward.

Thereafter, card processing companies continued to alert merchants about FACTA's truncation requirements. For example, a Visa Best Practice Alert in 2010 stated:

> Some countries already have laws mandating PAN truncation …. on cardholder receipts. For example, the United States Fair and Accurate Credit Transactions Act (FACTA) of 2006 prohibits merchants from printing more than the last five digits of the PAN …. on any cardholder receipt. (Please visit http://www.ftc.gov/os/statutes/fcrajump.shtml for more information on the FACTA.)

(ECF#1-3). Likewise, Mastercard warned merchants that:

> a Transaction receipt generated for a Cardholder by an electronic POI Terminal, whether attended or unattended, must reflect only the last four digits of the primary account number (PAN). All preceding digits of the PAN must be replaced with fill characters, such as "X," "*," or "#," that are neither blank spaces nor numeric characters.

(ECF#1-5).

Finally, to incentivize merchants to learn about and comply with FACTA, and encourage private litigants to enforce it, Congress gave the law teeth. Specifically, Congress incorporated FACTA into the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq*. ("FCRA"), which entitles a

successful plaintiff to statutory damages, punitive damages, costs and attorneys' fees for any "willful" conduct that violates the law. *See Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1306-1307 (11th Cir. 2009), *citing* 15 U.S.C. §1681n(a)(1)(A), and (2). This includes knowing or reckless conduct, such as when a defendant violates the statute despite being aware of its requirements. *See Harris*, 564 F.3d at 1310, *citing Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 59-60, 127 S.Ct. 2201, 2210 (2007) (an FCRA violation is "willful" if it is knowing or reckless); *see also Steinberg v. Stitch & Craft, Inc.*, No. 09-60660, 2009 U.S. Dist. LEXIS 72908, *9 (S.D. Fla. Aug. 18, 2009) (a complaint states claim for willful violation under FACTA if the defendant violated statute despite knowing its requirements).

    **C.    Spirit Was Specifically Made Aware of FACTA's Truncation Requirement Because It Was Previously Sued for Violating It.**

In addition to the years of widespread publicity about FACTA's requirements, Spirit was made acutely aware of the truncation requirement in 2010 when it was sued for violating it. In *Seider v. Spirit Airlines, Inc.*, No. 10-cv-60572-WJZ (S.D. Fla.), Spirit was charged with violating §1681c(g)'s prohibition against printing card expiration dates on transaction receipts. (ECF#1-6). The case settled.

    **D.    Spirit Subjected Plaintiff and the Proposed Class to a Pattern of Identical Violations of FACTA's Truncation Requirement.**

Despite its awareness of FACTA, Spirit began a pattern of violating the law again when it allowed its kiosks to start printing debit and credit card transaction receipts that listed more than the last five digits of the purchaser's card number. This practice continued for a period of time after August 29, 2012, and at least until August 31, 2014. (*See* Exhibit 1, Spirit Verified Answers to Discovery, pp.8-9, Answer to Req. for Admissions 18 and 20; and Exhibit 2, Declaration of Plaintiff Legg, ¶4). During this period, Spirit kiosks printed over 100,000 transaction receipts

that revealed more than the last five digits of debit and credit card numbers. (*See* Spirit Verified

Answers to Discovery, pp.8-9, Answer to Req. for Admissions 18 and 20).

Plaintiff is a member of this group. He made credit card purchases at Spirit airport kiosks

in Fort Lauderdale and Dallas/Fort Worth on August 28 and 31, 2014 and, in both instances, the

kiosks printed a transaction receipt that revealed more than the last five digits of his credit card.

(Legg Declaration, ¶3-¶4). Accordingly, Plaintiff seeks certification of the following class:

> *All individuals in the U.S. who: (i) made a payment to Spirit Airlines (ii) using a debit or credit card, and (iii) for which Spirit printed a point of sale receipt (iv) that displayed more than the last 5 digits of the card number (v) after August 29, 2012.*

Identification of the class members is simple because membership is based on objective

criteria, and because Spirit can identify the persons for which its kiosks printed the debit and

credit card receipts at issue. (*See* Spirit Verified Answers to Discovery, pp. 5-6, Answer to Req.

for Admission 10; *Id.*, pp. 14-15, Answer to Interrogatories 2-3; and *Id.*, p. 21, Answer Req. for

Production 2).[3] In addition, as explained below, the straightforward elements of this case easily

meet the requirements for class certification under Federal Rule of Civil Procedure 23.

Accordingly, the class should be certified.

**III.     The Class Meets All of the Requirements for Class Certification.**

Class certification is a matter within the Court's discretion. *DeLeon-Granados v. Eller &*

*Sons Trees, Inc.*, 497 F.3d 1214, 1218 (11th Cir. 2007). The class should be certified if it meets

the four requirements of Rule 23(a), and at least one subsection of Rule 23(b). *See* Fed. R. Civ.

P. 23; *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1321-22 (11th Cir. 2008). The four

requirements of Rule 23(a) are: (i) the class is so numerous that joinder of all members would be

---

[3] Although not written in Federal Rule 23, courts have found that Rule 23 implicitly requires the proposed class to be sufficiently "ascertainable." *C-Mart, Inc. v. Metro. Life Ins. Co.*, 299 F.R.D. 679, 687 (S.D. Fla. 2014).

impracticable (numerosity); (ii) the class members' claims present common questions of law <u>or</u> fact (commonality); (iii) Plaintiff's claim is typical of the class members' claims (typicality); and, (iv) Plaintiff and his counsel are adequate representatives of the class (adequacy). *See* Fed. R. Civ. P. 23(a); *DeLeon-Granados*, 497 F.3d at 1220.

The part of Rule 23(b) at issue here is subsection (3). It requires: (i) that the common questions of law or fact "predominate" over any questions that affect only individual class members, and (ii) that a class action is a superior method for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3); *DeLeon-Granados*, 497 F.3d at 1220. Plaintiff's proposed class meets all of these requirements.[4]

### A.    The Class Meets the Numerosity Requirement – Rule 23(a)(1).

The test for numerosity is that "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). There is no "definite standard" for satisfying this requirement in terms of how large the class must be, and it is not necessary to know the actual class size. *Fabricant v. Sears Roebuck, et al.*, 202 F.R.D. 310, 313 (S.D. Fla. 2001) ("There is no definite standard as to the size of a given class, and plaintiff's estimate need only be reasonable."), *citing Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986). However, a class of forty members is generally deemed adequate. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

Plaintiff's proposed class easily clears this low hurdle. Defendant admits that it printed over 100,000 card receipts that contained more than the last five digits of the debit or credit card

---

[4] The class certification decision is generally made apart from deciding the merits. "[A] court should not determine the merits of a claim at the class certification stage." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1358 (11th Cir. 2009). Instead, courts should only consider the merits "to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Id.*, *quoting Heffner v. BSBC of Ala., Inc.*, 443 F.3d 1330, 1337 (11th Cir. 2006).

used, and more than 10,000 in Ft. Lauderdale alone. (*See* Spirit Verified Answers to Discovery, pp.7-9, Answer to Req. for Admissions 14 and 18). Obviously, it would be impracticable to attempt to join more than 100,000 individuals as parties. Thus, the class meets the numerosity requirement.

### B.     The Class Meets the Commonality Requirement – Rule 23(a)(2).

The test for commonality is whether the class claims present "questions of law *or* fact common to the class." Fed. R. Civ. P. 23(a)(2) (emphasis added). This is another "low hurdle." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009). To clear it, Plaintiff need only show that the class claims present "at least one issue whose resolution will affect all or a significant number the putative class members," or that their claims "are susceptible to class-wide proof." *Williams*, 568 F.3d at 1355, *quoting Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) and *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982).

That is the case here. The class claims present at least two issues affecting all class members: (a) whether the card receipts Spirit's kiosks printed violate FACTA's truncation requirement, and (b) whether Spirit acted willfully, so that the class members may recover statutory and punitive damages. *See* 15 U.S.C. 1681c(g) and 1681n.

These issues are also susceptible to class-wide proof. For example, Spirit's answers to discovery establish that its airport kiosks were programmed to systematically print debit and credit card transaction receipts that show more than the last five digits of the card number, and the common evidence establishing Spirit's awareness of FACTA and the truncation requirement, such as the *Seider* lawsuit filed against it in 2010, will go to establish that Spirit's actions were willful. (Spirit Verified Answers to Discovery, pp.10-11, Answer to Req. for Admission 22; *Id.*, p. 18, Answer to Interrogatory 13). Accordingly, the class meets the commonality requirement.

*See Bush*, 2012 U.S. Dist. LEXIS 40450 at *21 ("courts considering whether to certify a FACTA class action on facts similar to those presented here have routinely found commonality.")

### C.      Plaintiff's Claims Are Typical of the Class Members' Claims – Rule 23(a)(3).

The typicality element of Rule 23 simply requires that Plaintiff's and the class members' claims "arise from the same event or pattern or practice and are based on the same legal theory." *Williams*, 568 F.3d at 1356-57, *quoting Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216-17 (11th Cir. 2012). That is the case here because Plaintiff and the class were subjected to the same conduct, and their claims present the same legal theory. Again, for Plaintiff and each class member, Spirit's kiosks printed a debit or credit card transaction receipt that revealed more than the last five digits of the card number, and their shared legal theory is that these receipts violate FACTA's truncation requirement, 15 U.S.C. §1681c(g), and thus that they are entitled to relief. "On this basis alone courts have found typicality exists." *Bush*, 2012 U.S. Dist. LEXIS 40450 at *25, *citing Shurland*, 259 F.R.D. at 159. Accordingly, Plaintiff meets the typicality requirement.

### D.      Plaintiff and His Counsel Meet the Adequacy Requirement – Rule 23(a)(4).

The adequacy element of Rule 23(a)(4) requires that Plaintiff and his counsel be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This means Plaintiff must have "no interests antagonistic to the class," and his counsel must be qualified to represent the class. *Fabricant*, 202 F.R.D. at 314-15, *citing Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726-28 (11th Cir. 1987).

Plaintiff meets this test because his interests are squarely aligned with the class. Like the class members, he claims Spirit violated his rights under FACTA by printing a card transaction receipt that reveals more than the last five digits of the card number, that Spirit acted willfully,

and thus that Spirit is liable for statutory damages, punitive damages, costs and attorneys' fees. In addition, he has no interests antagonistic to the class. (*See* Legg Declaration, ¶11).

Plaintiff's counsel are also adequate. They are well-respected members of the legal community who have extensive experience in the area of consumer rights and class action litigation. They have litigated multiple cases nationally (in several federal district courts), and have the resources necessary to conduct litigation of this nature. Also, Plaintiff's attorney Scott D. Owens has been appointed as lead class counsel in at least three other cases in the Southern District of Florida, and Plaintiff's attorney Michael Hilicki has approximately twenty years of class action experience. (*See* Exhibit 3, Declaration of Scott D. Owens; and Exhibit 4, Declaration of Michael Hilicki). Plaintiff's counsel have already diligently investigated and dedicated substantial time and financial resources to the investigation and prosecution of the claims at issue, and will continue to do so. This is more than sufficient. *See*, *e.g.*, *Fabricant*, 202 F.R.D. at 315 (plaintiff's counsel adequate because they "are experienced in class action litigation.") Accordingly, Plaintiff and his counsel meet the adequacy requirement.

**E.     The Class Meets the Requirements of Rule 23(b)(3).**

Once the elements of Rule 23(a) are met, the class only needs to satisfy one of the three subsections of Rule 23(b). *Busby*, 513 F.3d at 1321. Here, the class should be certified under subsection (b)(3), which provides that a class action may be maintained where "the questions of law or fact common to class members predominate over any questions affecting only individual members," and if "a class is superior to other available methods for fairly and efficiently adjudicating the controversy." *Williams*, 568 F.3d at 1357, *quoting* Fed. R. Civ. P. 23(b)(3). As shown below, this case easily meets both requirements.

1.    <u>Common Question of Law or Fact Predominate</u>.

Common issues of law or fact predominate "if they 'ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to …. relief." *Williams*, 568 F.3d at 1357, *quoting Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004).[5] That is the case here because the common questions that this case presents, which are listed in the discussion of Rule 23(a)(2)'s "commonality" element on page 9 above, directly affect the class members' ability to establish liability and obtain relief.

Specifically, the issue of whether Spirit violated FACTA by routinely printing debit and credit card receipts that reveal more than the last five digits of the card numbers directly impacts each class member's ability to establish liability because a "yes" to that question resolves the liability issue. *See* 15 U.S.C. §1681c(g); *see also Rogers*, 2010 U.S. Dist. LEXIS 103599 at *8 ("one common legal issue predominates in this case — whether the receipts printed by Defendant violate 15 U.S.C. §1681c(g).")

Likewise, the question of whether Spirit acted willfully directly impacts each class members' right to relief because the complaint only seeks statutory and punitive damages, and that relief is only available if Spirit acted willfully. 15 U.S.C. §1681n; *see also Bush*, 2012 U.S. Dist. LEXIS 40450 at *33 ("whether Calloway's noncompliance with FACTA was 'willful' applies to all class members' claims."), *citing Shurland*, 259 F.R.D. at 159.

---

[5] Note, Rule 23(b)(3) does not require all issues presented in the case to be common among the class. It only requires that the common issues to predominate over any individual issues. *Klay*, 382 F.3d at 1254 ("it is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions."), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

By contrast, this case does not raise any significant individual issues among the class members, let alone any so material that they could predominate over the common questions.[6] Thus, as is typical in FACTA cases generally, this case easily meets the predominance requirement. *See In re Toys "R" Us – Delaware, Inc. – Fair and Accurate Credit Trans. Act (FACTA) Litig.*, 300 F.R.D. at 376 ("The vast majority of courts outside this district have similarly found that common questions predominate in FACTA class actions.")

      2.    <u>A Class Action Is a Superior Method of Resolving This Matter</u>.

"Courts routinely find class resolution superior in consumer protection actions, including those brought pursuant to FACTA." *Bush*, 2012 U.S. Dist. LEXIS 40450 at \*33, *citing*, *inter alia*, *Matthews*, 248 F.R.D. at 216 ("FACTA claims are especially well-suited to resolution in a class action….") This case should be no different.

A class action is superior to individual actions here because it promotes efficiency and judicial economy. Resolving the common questions presented by the class members' FACTA claims in one lawsuit requires far fewer judicial resources than requiring potentially thousands of individual lawsuits to repeatedly decide the same questions over and over. *See Williams*, 568 F.3d at 1358 ("If a district court determines that issues common to all class members predominate over individual issues, then a class action will likely be more manageable than and superior to individual actions.")

---

[6] Some defendants have argued that FACTA cases present individual questions about whether the class members used a "business" credit card in the transactions giving rise to their claims. This is a non-issue because FACTA does not ask if a business owns the card used. *Shurland*, 259 F.R.D. at 160 ("FACTA's protections thus extend to holders of both business and consumer credit cards.") In any event, it is doubtful any significant portion of the class used a business-owned credit card here because Spirit's business model "focuse[s] on price-sensitive travelers who pay for their own travel." (Exhibit 5, Spirit 10-K Report, Dec. 31, 2013, p. 4). Accordingly, this alleged issue cannot defeat class certification. *See In re Toys "R" Us – Delaware, Inc. – Fair and Accurate Credit Trans. Act (FACTA) Litig.*, 300 F.R.D. at 377.

A class action also superior here because it promotes justice and fairness. It ensures that consumer class members who don't know they have a claim, or who lack ability or wherewithal to bring their own lawsuit, can vindicate their rights. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ("These are considerations that cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be more appropriate….")

By contrast, there is no legitimate benefit to requiring class members to file their own lawsuits. In fact, "[s]eparate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 659 (S.D. Fla. 2012), *quoting Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983).

Likewise, requiring individual class members to file their own suits would deter some from enforcing their rights because recoverable statutory damages are only $100-$1000 per person (15 U.S.C. §1681n(a)(1)), which may not provide a sufficient incentive to locate counsel and endure "all the burdens of suing." *See Mace*, 109 F.3d at 344; *see also Holmes v. Continental Can Co.*, 706 F.2d 1144, 1154 (11th Cir. 1983) ("the individual might be unable to obtain counsel to prosecute his action when the amount of individual damages is relatively small.") (citation omitted). A class action avoids this problem by aggregating what would otherwise be a series of "too small" potential individual recoveries. *See In re Checking Acct. Overdraft Litig.*, 286 F.R.D. at 659 ("The class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability.") In short, this case also satisfies the superiority requirement.

Furthermore, because this case meets all of the other requirements of Federal Rule 23, as shown above, the class should be certified.

IV.     CONCLUSION

FACTA cases are generally well-suited for class action treatment, and this case is no

exception. It will resolve thousands of nearly identical small claims in one fell swoop.

The class easily satisfies all of the requirements for class certification under Federal Rule

23. Accordingly, Plaintiff Christopher Legg, individually and on behalf of the proposed class,

respectfully requests that the Court certify the class and award all other and further relief that the

Court deems equitable and just to conclude this matter.[7]

Dated:  December 31, 2014.

> Respectfully submitted,
> By:/s/ *Scott D. Owens*
> Scott D. Owens, Esq.
> *Attorney for Plaintiff and the putative Class*
> Florida Bar No. 0597651
> SCOTT D. OWENS, P.A.
> 3800 S. Ocean Dr., Ste. 235
> Hollywood, FL 33019
> Telephone: 954-589-0588
> Facsimile: 954-337-0666
> scott@scottdowens.com
>
> Michael S. Hilicki (*pro hac vice*)
> Illinois Bar No. 6225170
> KEOGH LAW, LTD
> 55 West Monroe Street
> Suite 3390
> Chicago, Illinois 60603
> Telephone: (312) 726-1092
> Facsimile: (312) 726-1093
> mhilicki@keoghlaw.com
> *Attorneys for Plaintiff*

---

[7]  Plaintiff respectfully reserves the right to amend the putative class definition prior to the conclusion of this matter, subject to Court approval. Class definitions may be amended or altered at any time before final judgment. *See* Fed. R. Civ. P. 23(c)(1)(C); *see also*, *e.g.*, *Manno v. Healthcare Revenue Recovery Group, LLC*, 289 F.R.D. 674, 695 (S.D. Fla. 2013) (modifying class definition per Plaintiff's suggestion).

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on December 31, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will be served on all parties and counsel of record via the CM/ECF system.

By:/s/ *Scott D. Owens*
Scott D. Owens, Esq.
*Attorney for Plaintiff and the putative Class*
Florida Bar No. 0597651
SCOTT D. OWENS, P.A.
3800 S. Ocean Dr., Ste. 235
Hollywood, FL 33019
Telephone: 954-589-0588
Facsimile: 954-337-0666
scott@scottdowens.com