## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
## CASE NO. 0:14-cv-61978-JIC

| | |
|---|---|
| CHRISTOPHER W. LEGG | ) |
| Individually and on behalf of all others similarly situated, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SPIRIT AIRLINES, INC., a Delaware corporation, | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S REPLY MEMORANDUM
## IN SUPPORT OF AMENDED MOTION FOR CLASS CERTIFICATION

Defendant is a nearly $6 billion company that, for ten months, allowed its computer airport kiosks throughout the United States to systematically print debit and credit card receipts that violate FACTA's straightforward truncation requirement - even though it was sued for the very same violation just a few years ago. Defendant opposes this motion not because it has a legitimate basis for arguing that this case doesn't meet the requirements of Federal Rule 23, but because it doesn't want to pay a potential class damages award which Congress determined it must bear if this Court certifies the class and ultimately finds, at trial, that Defendant's violation was willful. In three ways, Defendant's response confirms that this case presents a textbook case for class treatment. Accordingly, Plaintiff's motion for class certification should be granted.

First, Defendant does not dispute that this case meets two of the requirements for certifying a class under Federal Rule 23(a) or the implicit requirement that the class must be sufficiently "ascertainable." Specifically, Defendant does not dispute that: (1) the class is so numerous that joinder of all members is impracticable, as required by Federal Rule 23(a)(1), because it has over a hundred thousand members (ECF No. 29, pp.8-9);[1] (2) Plaintiff is adequate to represent class members, as required by Federal Rule 23(a)(4) (*see* ECF No. 29, pp.10-11); and (3) Defendant can identify and thus ascertain the persons for which its kiosks printed the debit and credit card transaction receipts at issue (*see* ECF No. 29, p.7).[2]

Second, although Defendant disputes that Plaintiff meets the typicality and adequacy elements of Rule 23(a)(2) and (3), and the predominance and superiority requirements of Rule

---

[1] A class as low as 40 members is sufficient (*see* ECF No. 29, p.8), and Defendant admits it printed receipts revealing more than the last five digits of card account number in 467,225 transactions over ten months. (ECF No. 36, p.4; Rule 30(b)(6) Dep. Excerpt, attached as **Exhibit A**, at 93:23-95:14 and 98:13-99:5). Spirit cannot dispute numerosity as it provided a spreadsheet of the 467,225 transactions that list *at least* 269,911 unique names (*See* Declaration of Scott D. Owens, attached as **Exhibit B**, at ¶¶5-7). This number is *less* than the total number of transactions because Defendant has produced incomplete records, which Plaintiff has sought to compel. Obviously, the number of unique names will only increase once the data is provided. *See Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1039 (5th Cir. 1981) (numerosity may be established based on common sense assumptions); *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983) ("need not show the precise number of members in the class.").

[2] Defendant not only provided the class transaction report, but Defendant's Rule 30(b)(6) deponent confirmed it can run a report from its database that identifies the class members:

**Q. If you were to run a report – first of all, could you run a report identifying the customers associated with the transactions for which Spirit kiosks printed credit or debit card receipts showing more than the last five digits of card numbers?**

A. Yes. (Rule 30(b)(6) Dep. Excerpt, attached as **Exhibit A**, at p.67:4-68:2).

23(b)(3), it does not even address (let alone refute) Plaintiff's showing why this case meets them.

Third, each argument Defendant makes against the commonality, typicality, predominance and superiority requirements is contrary to law, incorrect, irrelevant, or some combination thereof. Thus, as further explained below, this case should join the numerous other FACTA cases that have been certified for class treatment. (ECF No. 29, pp.3-4 and fn.2, collecting cases, including *Bush v. Calloway Consol. Gp. River City, Inc.*, No. 10-cv-841, 2012 WL 1016871 at *11 (M.D. Fla. Mar. 26, 2012) ("Courts routinely find class resolution superior in consumer protection actions, including those brought pursuant to FACTA."))

## I.     This Case Meets Rule 23(b)(3)'s Predominance Requirement.

### A.     Defendant Does Not Refute the Proof that Common Questions Predominate

It is undisputed that the test for predominance is whether the common questions raised in this case have a "direct impact" on each class members' ability to recover. (ECF No. 29, p.12, *citing Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009)). It is also undisputed that each class member's claim presents at least two common questions: (a) whether Defendant violated FACTA's requirements by printing a receipt that reveals more than five digits of the class member's debit or credit card account number, and (b) whether the violation was willful. (ECF No. 29, p.12). And it is undisputed that these common questions have a direct impact on each class member's claim because their resolution determines whether each class member can establish liability and a right to statutory damages. (*Id.*) Thus, Defendant does not refute Plaintiff's showing that here, as is typical in FACTA cases, common questions predominate. *See In re Toys "R" Us – Delaware, Inc. – Fair and Accurate Credit Trans. Act (FACTA) Litig.*, 300 F.R.D. 347, 376 (C.D. Cal. 2013) ("The vast majority of courts outside this district have similarly found that common questions predominate in FACTA class actions.")

### B.     Defendant's Arguments Against Predominance Fail

#### 1.     The Personal/Business Credit Card Distinction is a Non-Starter

Instead of addressing the test for predominance or Plaintiff's argument, Defendant claims some customers used business credit cards instead of personal credit cards, and that identifying them allegedly bars common questions from predominating. This argument fails for two reasons.

First, it is a non-issue. FACTA does not distinguish between personal and business debit/credit cards. *Shurland v. Bacci Café & Pizzeria on Ogden, Inc.*, 259 F.R.D. 151, 160-161

2

(N.D. Ill. 2009) ("the plain language of the Act makes no such distinction.") Instead, FACTA's plain text requires truncation of "any receipt." 15 U.S.C. §1681c(g)(1); *Grabein v. Jupiterimages Corp.*, No. 07-22288, 2008 U.S. Dist. LEXIS 65828, at *8 (S.D. Fla. July 7, 2008) ("***FACTA Applies to Both Business and Consumer Debit Cards***"). In fact, *Shurland* expressly criticizes the case Defendant cites for its argument because it does not reconcile its conclusion with the statute's text. *Shurland*, 259 F.R.D. at 160 ("The opinion itself does not explain the statutory basis for this reasoning."), *citing Najarian v. Avis Rent A Car Sys.*, No. CV 07-588-RGK, 2007 WL 4682071, at *3 (C.D. Cal. 2007)

Second, even if business/personal card distinction was an issue,[3] its mere presence can't defeat class certification. Rule 23 only requires common issues to predominate over individual issues, not a complete absence of individual issues. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004) ("it is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions."), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). That is the case here because again, as shown, it is undisputed that the common liability questions this case presents have a "direct impact" on each class members' claim. By contrast, the alleged need to determine which class members used a business credit card only impacts the persons who used such cards, Defendant admits it is no more than 13% of the class, Defendant's alleged knowledge of this specific percentage suggests it can already identify who they are (it doesn't claim it can't), and even if it doesn't know it would be a simple administrative matter to figure it out by subpoenaing card companies. *See, e.g.*, *Vasquez-Torres v. StubHub, Inc.*, No. 07-1328, 2008 U.S. Dist. LEXIS 22503 at *16 (C.D. Cal. Mar. 4, 2008) ("Defendants can easily determine whether the card was used in the name of an individual or corporation."); *Shurland*, 259 F.R.D. at 161 ("isolating 'consumer' cardholders from entity cardholders is unlikely to prove insurmountable for class identification purposes"); *Beringer v. Std. Parking Corp.*, No. 07 C 5027, 2008 U.S. Dist. LEXIS 72873 at *16 (N.D. Ill. Sept. 24, 2008) ("the court is not yet

---

[3] The source of Defendant's claim that a measurable percentage of people used a business credit card is the declaration of Hilton Sturisky, who didn't work for Defendant at the start of events giving rise to this case in 2013 (*compare* ECF No. 36-2 to 30(b)(6) Dep. Excerpt, attached as **Exhibit A**, at p.9:18-25 (joined in 2014)), and who offers no facts to show he has personal knowledge of the matter. Conclusory hearsay is not proof. *See, e.g. Cosac Found., Inc. v. City of Pembroke Pines*, No. 12-62144, 2013 U.S. Dist. LEXIS 135647 at *19 (S.D. Fla. Sept. 21, 2013).

3

persuaded that this problem is insurmountable.") Alternatively, class members could be given a sworn claim form in which they can confirm their card was personal. *See Boundas v. Abercrombie & Fitch Stores*, 280 F.R.D. 408, 417 (N.D. Ill. 2012); *Agne v. Papa John's*, 286 F.R.D. 559, 566 n.6 (W.D. Wash. 2012). Accordingly, the alleged personal/business card distinction does not justify Defendant's argument against the predominance requirement.

### 2.   "Actual Damages" is a Non-Issue in this Matter

Defendant also claims individual "actual damages" issues will predominate over the common liability questions, but in doing so it contradicts itself because Defendant admits the "Complaint only seeks statutory damages." (ECF No. 36, p.16). The statute provides for statutory damages in lieu of actual damages when, as here, it is alleged that Defendant's violation of the statute was willful. *See Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1313 (11th Cir. 2009) ("plaintiffs may elect to receive actual damages *or* statutory damages, but not both.") Thus, contrary to Defendant's claim that "actual damage" issues preclude a class, the fact that the complaint only seeks statutory damages helps show that common questions predominate. *See In re Toys "R" Us – Delaware, Inc. – Fair and Accurate Credit Trans. Act (FACTA) Litig.*, 300 F.R.D. at 377 ("Courts have been more willing to find predominance where, as here, the class seeks only statutory damages.") In sum, this case meets the predominance requirement.

## II.   This Case Meets Rule 23(b)(3)'s Superiority Requirement

### A.   Defendant Does Not Refute the Proof that a Class Action Is Superior

Defendant does not dispute that a class action promotes efficiency and judicial economy by resolving the common liability and willfulness issues this case presents in one lawsuit instead of requiring multiple courts to preside over discovery for and adjudicate these same issues over and over again in potentially thousands of individual lawsuits. (ECF No. 29, p.13). Defendant also does not dispute that a class action promotes fairness by ensuring that class members who are unaware of their rights, or who lack the ability or wherewithal to file their own case, will still be able to vindicate their claims. (ECF No. 29, p.14). Accordingly, Defendant does not refute Plaintiff's demonstration that this case meets the superiority requirement.

### B.   Defendant's Superiority Arguments Are Contrary to Well-Established Law

### 1.   A Class Action Is Superior to Individual Actions

4

Defendant tries to imply that the superiority requirement means something different than what the rule says. It suggests that "superiority" means a class action is only appropriate if there is "no realistic alternative" to a class action, and then cites two pages of non-binding cases to show individual actions are possible because FACTA provides for statutory damages, attorneys' fees and costs. This misreads Rule 23. The rule's text only requires a class action to be superior to other methods. Fed. R. Civ. P. 23(b)(3). It does not require a class action to be "the only" method. *Id.* The case Defendant cites for this argument only says that one instance in which a class action is superior is when no realistic alternative exists, not that that is the only time it is superior. *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-1235 (9th Cir. 1996).

A comparison of individual and class action alternatives plainly shows that a class action is superior. The relief available to each class member is the same as a class action as it is in an individual action – $100 - $1000 in statutory damages if the violation is willful, plus attorneys' fees and costs. 15 U.S.C. §1681n. But a class action is better for class members because it spares them the need to recognize they have a claim, find a lawyer to take it, and deal with the rigors of discovery and trial on their own. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997). A class action is also better for the courts, sparing them the need to preside over and decide the fact and liability issues this case presents multiple times instead of just once. *See In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 659 (S.D. Fla. 2012) ("Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts."), *quoting Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983).

Defendant does not identify any reason to think that individual actions would be superior to a class action for class members or the courts. It just prefers individual actions because most class members will not file suit, allowing it to avoid their claims. But enabling Defendant to skirt liability for its actions is not a basis for opposing class certification recognized by Rule 23. In short, a class action is plainly superior to individual actions.

## 2.     Aggregating Statutory Damages Is Not a Basis for Opposing Certification

Defendant's remaining superiority argument is based on the perverse idea that Defendant should be spared from facing a class action simply because it broke the law so many times it might have to pay a large award if the case proceeds on a class basis and the class wins. Specifically, it claims that a class is "not superior" because *if* the class proves Defendant violated FACTA, and *if* the class proves that its violation was willful, then Defendant could be liable for a

5

minimum statutory damages award of $47 million, and that this potential award would be unconstitutionally excessive and violate "due process." This argument fails on many fronts.

First, it is premature. The Eleventh Circuit rejected a similar constitutional argument as unripe in a FACTA class action because, among other things, it was based on the *assumption* the class would prove willfulness and obtain the award the defendant claimed:

> Once the district court's assumptions are removed, the as-applied excessiveness challenge is not ripe. At this stage in the proceedings it is impossible to know whether the classes will be certified, how many individuals will be included in each class, whether they will prove willfulness, and the size of the ultimate verdicts.

*Harris,* 564 F.3d at 1310. Defendant's argument is no less assuming. Accordingly, under *Harris,* this issue must be tabled until *after* class certification, a finding of willfulness, and an award of damages.

Second, Defendant's potential excessiveness argument fails on our facts. Defendant warns of "annihilating" damages, but it faces no such risk. It admits the award could be as low as $47 million, yet Defendant is worth almost $6 *billion*. (*See* http://quotes.morningstar.com/ stock/save/s?t=save (last visited 3/19/2015)). This stands in glaring distinction to the cases it cites, one involving a local restaurant facing a $4.6 to $46 million liability, and the other a *pro se* defendant. *Leysoto v. Mama Mia I., Inc*., 255 F.R.D. 693, 698 (S.D. Fla. 2009); *Ehren v. Moon, Inc.*, 2010 U.S. Dist. LEXIS 133085 at *3 (S.D. Fla. Dec. 3, 2010) (granting a default judgment).

Third, Defendant's argument is contrary to Congressional intent. The Supreme Court holds that class relief under Rule 23 is available for any claim unless Congress expressly says otherwise, and it has not said otherwise for FACTA. *Hammer v. JP's Southwestern Foods, L.L.C.*, 267 F.R.D. 284, 290 (W.D. Mo. 2010) ("Class relief under Rule 23 is available for any claim unless Congress has expressly restricted relief. [citation]. Congress has not restricted class relief under FACTA…"), *citing Califano v. Yamasaki*, 442 U.S. 682, 700 (1979) ("In the absence of a direct expression by Congress of its intent to depart from the usual course of trying 'all suits of a civil nature' under the Rules established for that purpose, class relief is appropriate in civil actions brought in federal court"). Likewise, every appellate court to address the matter, and most district courts, explain why a "potentially large award" is not a permissible criteria for evaluating superiority. *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 721-723 (9th Cir. 2010) ("To limit class availability merely on the basis of 'enormous' potential liability that Congress explicitly provided for would subvert congressional intent."); *Murray v. GMAC Mort.*

6

*Corp.*, 434 F.3d 948, 953-54 (7th Cir. 2006) ("The reason that damages can be substantial, however, does not lie in an 'abuse' of Rule 23; it lies in the legislative decision to authorize awards as high as $1,000 per person, 15 U.S.C. §1681n(a)(1)(A), combined with GMACM's decision to obtain the credit scores of more than a million persons.").

Defendant cites *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246 (11th Cir. 2003) and *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004), to argue that Eleventh Circuit found "potential disproportionate, annihilating damages" to be relevant to superiority, but it admits neither case denied certification on that ground. (ECF No. 36, p.8). Also, both cases predate *Harris*, *Bates* and *Murray*, and neither addresses the Supreme Court's opinion in *Califano*. Further, *London* did not squarely reach the issue. *London*, 340 F.3d at 1255 ("we need not reach the remaining issues pending in this appeal.") Likewise, *Klay*'s discussion of the matter is also dicta and, regardless, *Klay* says a large damages award it is not a concern when, as here, the class must prove Defendant's violation was willful to recover statutory damages. *See Klay*, 382 F.3d at 1271 ("Where the defendant's alleged behavior is deliberate or intentional, we have had no problem allowing class actions to proceed.")

Defendant's argument also cannot be squared with *Shady Grove Orthopedic Associates, P.A., v. Allstate Ins. Co.*, 559 U.S. 393 (2010), whose plurality found it "obvious" that plaintiffs may aggregate multiple small claims for statutory damages in a class action. In response to the defendant's argument that aggregation of statutory penalties improperly transforms a dispute over $500 into a suit for $5 million, Justice Scalia noted:

> [A]ggregate liability, however, does not depend on whether the suit proceeds as a class action. Each of the 1,000-plus members of the putative class could (as [the defendant] acknowledges) bring a freestanding suit asserting his individual claim. It is undoubtedly true that some plaintiffs who would not bring individual suits for the relatively small sums involved will choose to join a class action. That has no bearing, however, on [the defendant's] or the plaintiffs' legal rights. The likelihood that some (even many) plaintiffs will be induced to sue by the availability of a class action is just the sort of "incidental effec[t]" we have long held does not violate § 2072(b).

*Id.* at 408. Justice Stevens' concurrence provides a fifth vote for this holding. *Id.* at 435, n.18. Thus, *Shady Grove* also precludes Defendant's argument that aggregating statutory damages in a class action is somehow improper.[4] In fact, Rule 23 "creates a categorical rule entitling a plaintiff

---

[4] Responding to Justice Ginsburg's argument that class certification would "transform a $500 case into a $5,000,000 award," Justice Stevens notes: "[C]lass certification would transform

whose suit meets the specified criteria to pursue his claim as a class action." *Id*. at 398.

Finally, Defendant suggests statutory damages must be proportional to actual damages, but this argument only applies to punitive damages, not statutory damages. They are not the same because the FCRA allows recovery of both statutory damages and punitive damages for a willful violation. *Harris*, 564 F.3d at 1313. Statutory damages eliminate the need to prove actual damages. *See Bateman*, 623 F.3d at 719. The cases Defendant cites to argue proportionality, *B.M.W. v. Gore* and *State Farm v. Campbell*, dealt with punitive damages, not statutory damages, and not class certification. In short, the size of the potential award is irrelevant.

### III.    This Case Meets the Commonality and Typicality Requirements

Defendant does not dispute that the test for Rule 23(a)(2)'s commonality requirement is that the case presents one or more "questions of law or fact common to the class," or that the test for Rule 23(a)(3)'s typicality requirement is that Plaintiff's and the class's claims "arise from the same event or pattern or practice and are based on the same legal theory." *Williams,* 568 F.3d at 1356-57; (ECF No. 29, pp.9-10). Also, it does not address Plaintiff's showing that this case meets Rule 23(a)(2)'s commonality test because it presents the common liability questions listed on p.2 above, or his showing that this case meets the typicality test because all claims arise from the common practice of Defendant's airport kiosks printing receipts that reveal more than the last five digits of debit and credit card numbers, and all claims are based on an *identical* legal theory under FACTA. (ECF No. 29, pp.9-10).

Instead, Defendant claims these requirements are not met because it is "possible" that some members of the class suffered actual damages, yet the complaint only seeks statutory damages as allowed by FACTA. (ECF No. 36, p.16). This argument ignores the actual tests for commonality and typicality which, as shown above, it is undisputed this case meets. Neither test requires Plaintiff and the class to suffer actual damages or plead a request for actual damages.

In addition, Defendant's argument is based on impermissible speculation. *See Klay*, 382 F.3d at 1272-73 ("speculative problems" do not bar a class action). It admits it "is not aware of any" class members with a claim for actual damages. (ECF No. 36, p.2).

---

10,000 $500 cases into one $5,000,000 case. It may be that without class certification, not all of the potential plaintiffs would bring their cases. But that is true of any procedural vehicle; without a lower filing fee, a conveniently located courthouse, easy-to-use federal procedural rules, or many other features of the federal courts, many plaintiffs would not sue." *Id.* at 435, n.18.

Indeed, Defendant's argument doesn't make sense because the law does not allow the class to get both actual damages and statutory damages. *See Harris*, 564 F.3d at 1313 ("plaintiffs may elect to receive actual damages *or* statutory damages, but not both.") Given that statutory damages are at least $100 per person for a willful violation, and further given that Defendant cannot identify a single class member with actual damages, Plaintiff would be doing the class a disservice if he sought actual damages instead of statutory damages.

The cases Defendant cites for its argument do not support it. None found Rule 23(a)(2) commonality or Rule 23(a)(3) typicality lacking based on the idea that some class members *might* have suffered actual damages. The main case Defendant cites does not discuss Rule 23(a)(2) or (a)(3), or FACTA. *See Preston v. Mortgage Guaranty Ins. Corp.,* 2004 U.S. Dist. LEXIS 28914 (M.D. Fla. June 21, 2004). By contrast, Defendant's argument about possible actual damages "ha[s] been rejected in other cases because FACTA violations are likely to have caused little provable actual damages and any class member who has suffered substantial actual damages is free to opt out of the class." *Miller-Huggins v. Mario's Butcher Shop, Inc.*, No. 09-3774, 2010 U.S. Dist. LEXIS 16493 at *11-*12 (N.D. Ill. Feb. 22, 2010) (collecting cases).

## IV. Defendant's Remaining Points Have No Bearing on Class Certification

Defendant peppers its brief with matter having no apparent connection to the test for class certification, apparently in the hope this motion will be decided based on something other than the law. This is improper because class certification must be decided in accordance with the requirements of Federal Rule 23. *See Local 703 I.B. of T. Grocery & Food Employees Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1253 (11th Cir. 2014) (class certification decision subject to reversal if it is based on "the wrong legal standard" or "applies the law in an unreasonable or incorrect manner.") Accordingly, Defendant's remaining points do not and cannot justify its opposition to class certification.

### A. Plaintiff's Other Lawsuits Are Irrelevant

Defendant notes Plaintiff has been a party to a number of other class action lawsuits, but Rule 23 does not ask how many lawsuits the named plaintiff has filed, let alone bar class certification if he has filed "too many." *See Murray*, 434 F.3d at 954 ("The district judge did not cite a single decision supporting the proposition that someone whose rights have been violated by 50 different persons may sue only a subset of the offenders.") Indeed, this Court has already found Mr. Legg to be an adequate class representative. *Legg v. Voice Media Group, Inc.*, 2014

9

U.S. Dist. LEXIS 61836 at *14 (S.D. Fla. May 5, 2014). Thus, his other lawsuits are irrelevant.

**B.    Defendant's Attempt to Blame IBM is Incorrect and Favors Certification**

Defendant claims IBM caused its airport kiosks to print receipts that violate FACTA, but it does not state what bearing this claim has on class certification. It cannot because the question of whether Defendant or IBM is responsible for Defendant's actions goes to whether its violation was "willful," and that is a merits issue that may not be resolved here. *See Williams*, 568 F.3d at 1358 ("[A] court should not determine the merits of a claim at the class certification stage.")

If anything, Defendant's attempt to blame IBM for each of the thousands of alleged violations at issue shows that a class action is appropriate because Defendant does not dispute that the willfulness inquiry is a common issue for all class members, or that it makes more sense to resolve that question in a class action instead of forcing multiple courts to adjudicate that issue over and over again in multiple individual lawsuits. Thus, Defendant's admission that there is a single cause for the events giving rise to this action in reality favors class certification.

Even if Defendant's finger-pointing was relevant here, the witness it cites for it, Hilton Sturisky, has no personal knowledge of the matter. Defendant admits the events that led to its kiosks printing receipts in violation of FACTA occurred in 2013, but Mr. Sturisky didn't begin working for Defendant until mid-2014 (Dep. Excerpt, attached as **Exhibit A**, at p.9:18-25). Likewise, he provides no facts to support his conclusory assertion that IBM later "admitted" that it caused the kiosks to print receipts that reveal too many digits of cardholders' account numbers.

In contrast, documents produced in this case show Defendant's kiosks functioned exactly how Defendant meant them to. ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████. Regardless, this sort of "blame-game" defense applies universally to all class members and further demonstrates that this matter is appropriate for class treatment. For all these reasons, the pending motion for class certification should be granted.

Respectfully submitted,

By:/s/ *Scott D. Owens*
Scott D. Owens, Esq.
Florida Bar No. 0597651
SCOTT D. OWENS, P.A.
3800 S. Ocean Drive, Suite 235
Hollywood, Florida 33019
Telephone: 954-589-0588
Facsimile: 954-337-0666
scott@scottdowens.com

Michael S. Hilicki (*pro hac vice*)
Illinois Bar No. 6225170
KEOGH LAW, LTD
55 West Monroe Street
Suite 3390
Chicago, Illinois 60603
Telephone: (312) 726-1092
Facsimile: (312) 726-1093
mhilicki@keoghlaw.com

*Attorneys for Plaintiff and the putative Class*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 19, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will be served on all parties and counsel of record via the CM/ECF system.

By:/s/ *Scott D. Owens*
Scott D. Owens, Esq.
Florida Bar No. 0597651
SCOTT D. OWENS, P.A.
3800 S. Ocean Drive, Suite 235
Hollywood, Florida 33019
Telephone: 954-589-0588
Facsimile: 954-337-0666
scott@scottdowens.com

11