UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 0:14-cv-61978-JIC (*Legg*)
CASE NO. 0:15-cv-61375-JIC (*Rosen*)

CHRISTOPHER W. LEGG,
individually and on behalf of all others similarly situated,

        Plaintiff,

v.

SPIRIT AIRLINES, INC., a Delaware corporation,

        Defendant.

JOSEPH ROSEN,
individually and on behalf of all others similarly situated,

        Plaintiff,

v.

SPIRIT AIRLINES, INC., a Delaware corporation,

        Defendant.

**PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT**

    Plaintiffs respectfully move the Court for preliminary approval of the nationwide class action settlement ("Settlement") reached between Plaintiffs Christopher W. Legg and Joseph Rosen ("Plaintiffs") and Defendant Spirit Airlines, Inc. ("Spirit"). The proposed Settlement would resolve all claims in both of the above-entitled lawsuits. This class action alleges that

Spirit systematically printed debit and credit card transaction receipts that revealed more than the last five digits of the debit and credit card account numbers used in the transaction, in willful violation of the Fair and Accurate Credit Transaction Act, 15 U.S.C. §1681c(g)(1) (FACTA). Spirit vigorously denies these allegations.

Nevertheless, the Parties discussed the prospect of settling the case on several occasions and throughout the proceedings, including two separate full days of mediation before separate third-party mediators in March and August 2015, as well as additional communications between mediation sessions. The settlement was only reached at the second mediation after the production and analysis of more than 175,000 pages of documents, the taking of depositions, including a third party deposition in Canada, and the successful resolution of Plaintiff Legg's motion for class certification. A true and accurate copy of the Settlement Agreement and Release ("Agreement") is attached hereto as *Appendix 1*.

Under the Agreement, Spirit will pay Seven-and-a-half Million Dollars ($7,500,000.00) to a Settlement Fund. The Settlement Fund will be divided *pro rata* among all class members who submit a timely claim, after payment of the costs of notice and administration and the approved fee, expense and class representative incentive awards. The maximum per-class member payment is capped at $1,000, which is the maximum statutory damages recoverable for a willful violation of FACTA. 15 U.S.C. § 1681n(a)(1)(A). If the Settlement is approved and consummated, Plaintiffs' counsel estimates that each class member who submits a timely claim will receive approximately $265. No money will revert back to Spirit.

All told, this settlement is the second largest all cash settlement[1] in the history of FACTA and provides the class with a significant portion of the statutory damages available for a willful

---

[1] The largest all cash settlement was for $11 million dollars, but for a larger class.

violation of FACTA. In addition, as a direct result of the lawsuit, Spirit has brought its credit and debit card transaction receipts into compliance with FACTA. Given the hurdles facing the Class in this litigation and the difficulty of proving willfulness, the results achieved are outstanding. Indeed, counsel believes this settlement is one of the largest cash settlements recovered in a FACTA case.

The Court has already certified the class, appointed Plaintiff Legg class representative, and appointed his attorneys Scott D. Owens of Scott Owens, P.A. Michael S. Hilicki of Keogh Law, Ltd. as Class Counsel. Their declarations in support of the settlement are attached as *Appendix 2* and *Appendix 3*, respectively. By this motion, Class Representative Legg and Plaintiff Rosen hereby ask that the Court: (a) appoint Plaintiff Rosen as an additional class representative of the settlement class, (b) appoint Rosen's attorney Thomas J. Lyons, Jr. as additional class counsel for the settlement class, (c) enter an order preliminarily approving the Settlement and plan for giving notice of it to the class, and setting this matter for a fairness hearing; and (d) grant such additional relief as deemed just.

## I. NATURE OF THE LITIGATION

### A.   Litigation, Mediation, and Settlement

FACTA aims to help reduce identity theft by requiring merchants to eliminate certain personal financial information from credit and debit card receipts. *Redman v. Radioshack Corp.*, 768 F.3d 622, 639 (7th Cir. 2014) ("identity theft is a serious problem, and FACTA is a serious congressional effort to combat it.") To encourage private litigants to enforce FACTA's requirements, Congress incorporated FACTA into the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.* ("FCRA"), which entitles a successful plaintiff to statutory damages costs and attorneys' fees for any "willful" violation of the law. *See Harris v. Mexican Specialty Foods,*

3

*Inc.,* 564 F.3d 1301, 1306 1307 (11th Cir. 2009), *citing* 15 U.S.C. §1681n(a)(l)(A), and (2). Consistent with this intent, Plaintiffs Legg and Rosen brought their respective lawsuits to resolve Spirit's alleged systematic violation of FACTA's prohibition against printing more than the last five digits of credit or debit card numbers on transaction receipts. [**ECF No. 1**].

The litigation has been hard fought throughout. In August 2014, Plaintiff Rosen and Plaintiff Legg filed their complaints. [**ECF No. 1, 80**]. Extensive discovery ensued, which Spirit resisted, necessitating a motion to compel that was granted. [**ECF No. 33, ECF No. 44**]. In addition to written discovery, Spirit produced more than 175,000 pages of documents, and the parties briefed other motions for resolution of discovery issues as well. These included Spirit's motion to reconsider the order granting Legg's motion to compel [**ECF No. 51**], a motion by Spirit to compel certain discovery [**ECF No. 69**], and a motion to quash subpoenas [**ECF No. 86**]. The parties also took a number of depositions, including one deposition of non-party IBM in Toronto, Canada.

On December 31, 2015, Plaintiff Legg filed his amended motion for class certification. [**ECF No. 29**]. This motion was fully briefed and, on June 10, 2015, the Court granted the motion, certifying the Class. [**ECF No. 64**]. The parties also litigated Spirit's attempt to change its answer to the complaint [**ECF Nos. 56, 62, 63, 66**], Spirit's motion to reconsider the denial of that motion [**ECF Nos. 79, 90,104**], Spirit's motion to consolidate the Legg and Rosen actions [**ECF No. 80, 89, 103**], Spirit's motion to stay the case pending the Supreme Court's resolution of a different case Spirit claimed could impact these cases [**ECF Nos. 81, 94**], and Spirit's insurer's motions to intervene and stay proceedings. [**ECF No. 98** and **ECF No. 99**].

During the pendency of Plaintiff Legg's class certification motion, on March 5, 2015, the parties attended an initial mediation session before a private, third party mediator, Judge Wayne

4

R. Andersen (ret.).[2] The parties did not reach a settlement at that time, but discussed matters which would advance their ability to engage in meaningful settlement negotiations. After that, the negotiations continued by informally between the parties as the case progressed.

On August 19, 2015, the parties attended a second full-day mediation before Mark Buckstein, this time at the offices of Spirit's counsel in Miami.[3] As a result of this mediation, the parties reached a preliminary settlement. **[ECF No. 110]**. After that, the parties spent over a month negotiating the final terms of the agreement and drafting the necessary papers to attendant to the Settlement. A copy of the Settlement Agreement is attached as *Appendix 1*.

## II. SUMMARY OF THE PROPOSED SETTLEMENT

The key terms of the proposed settlement follow:

**A.     Class Definition.** The Settlement Class is same Class that has already been certified by the Court, which is defined as follows:

> All individuals in the U.S. who: (i) made a payment to Spirit (ii) using a debit or credit card, and (iii) for which Spirit printed a point of sale receipt (iv) that displayed more than the last five digits of the card number (v) after August 29, 2012.
>
> Notwithstanding the foregoing, in compliance with 28 U.S.C. §455, this class specifically excludes persons in the following categories:
>
> (A) The district judge and magistrate judge presiding over this case and the judges of the United States Court of Appeals for the

---

[2] Judge Andersen is with JAMS, he served as a U.S. District Judge for the Northern District of Illinois for 19 years, and served as a state court trial judge for 7 years. Judge Andersen has also conducted thousands of settlement conferences during his service on both the federal and state judiciary.

[3] Mark Buckstein, Esq. has been with Professional Dispute Resolutions, Inc., an organization engaged in mediation, arbitration and other ADR processes and techniques, since 1999. He serves as its Chairman, and he is principally active in fields of securities, employment, real estate, insurance, commercial and contract, malpractice, intellectual property and class actions. He also conducts training programs and lectures on negotiations and alternative dispute resolution.

>>Eleventh Circuit;
>
>>(B) the spouses of those in category (A);
>
>>(C) any person within the third degree of relationship of those in categories (A) or (B); and
>
>>(D) the spouses of those within category (C).

[**DE 64**, pp.14-15]. Based on the information produced by Spirit, the Class contains about 350,000 members. Because the Court has already determined that class certification is appropriate, it need not repeat that analysis.

>B.   **Structure of the Settlement Amount.** The Agreement provides on page 10 that Spirit shall pay Seven-and-a-half Million Dollars ($7,500,000.00) for the benefit of the class. No money shall revert back to Spirit.

>C.   **Individual Class Member Benefits.** A Settlement Class Member who submits a timely claim form will receive a *pro rata* share of the net settlement proceeds after payment of the cost of sending notice of the settlement to the class, settlement administration expenses, the attorneys' fee and expense award, and any class representative incentive awards. Plaintiff expects each class member to recover $265 based on a 5% claim rate.

>D.   **Additional Relief.** In addition to the individual relief to the class provided above, Spirit has agreed to payment of the cost of preparing, sending notice of the Settlement to the class, including but not limited to establishment and maintenance of the settlement Website, the cost of publishing additional notice if necessary, and the cost of handling and disbursing settlement proceeds, from the Settlement Fund.

>E.   **Compensation for the Class Representative:** The agreement does not provide any clear sailing agreement for Plaintiffs to obtain incentive awards. Instead, Legg and Rosen

shall each apply to the Court for an incentive award not to exceed ten thousand dollars ($10,000).[4]

**F. Payment of Attorneys' Fees:** Like the incentive awards, the agreement does not provide any clear sailing agreement for attorney fees and expenses. Instead, the Parties have agreed that Plaintiffs' counsel may apply to this Court for awards of attorneys' fees and expenses associated with the Action. Plaintiffs' counsel will petition the Court for an award of attorneys' fees not to exceed one-third of the Settlement Fund, plus expenses, and the notice advises the class of such.

**G. Release.** In exchange for the relief described above, the release is applicable to all class members and releases any and all claims, as more fully set forth in the Settlement Agreement, related to or arising out of claims that were made or could have been made in this litigation regarding the disclosure, display, publication, provision or printing of credit or debit cardholder account information. The full scope of the release, and its exact terms, is fully set forth in § VI of the Settlement Agreement, attached hereto as *Appendix 1*.

## III. THE COURT HAS ALREADY DETERMIEND THAT THE CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION UNDER FEDERAL RULE 23

To settle a case on a class basis, the class must meet the requirements for class certification. *See Manual for Complex Litigation* (Fourth) § 21.632; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is appropriate if the proposed class meets the elements of Federal Rule of Civil Procedure 23, including the requirement that the plaintiff and his counsel be adequate class representatives.[5]

---

[4] The Seventh Circuit was recently critical of a $7,500 incentive award as being too small. *Ira Holtzman, C.P.A, & Associates Ltd. v. Turza*, 728 F.3d 682, 690 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1318 (2014) (describing the award as a "disincentive" award).

[5] Although this Court already found that the Class meets the superiority requirement of Federal

Here, the Court already determined the Class meets the requirements of Rule 23, and that both Plaintiff Legg and his counsel are adequate representatives of the Class, when the Court granted Plaintiff Legg's motion for class certification. [**ECF No. 64** at p.4, ("Plaintiff's proposed class is ascertainable and has satisfied Rule 23's requirements. Further, Legg and his attorneys have shown themselves to be adequate representatives of the absent class members. The Court will therefore also appoint Legg and his attorneys as class representative and class counsel.")]. Nothing has occurred since the Court's ruling to change the fact that the Class meets the requirements of Rule 23, or change the fact that Plaintiff Legg and his counsel are adequate to represent the Class.

In addition, because the class action Settlement resolves not only Legg's case but also the companion case of *Rosen v. Spirit Airlines, Inc.*, 15-cv-61375-JIC (S.D. Fla.), Plaintiff Rosen and his counsel should be added as additional class representative and class counsel. Like Legg and his attorneys, Rosen and his attorney meet the adequacy requirements of Federal Rule 23(a)(4) because: (1) Rosen has no interests antagonistic to the class, and (2) his counsel is competent to represent the class. *See Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 314-15 (S.D. Fla. 2001) (*citing Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726-28 (11th Cir. 1987)). Specifically, Rosen's interests are aligned with the Class because they both stand to recover statutory damages, and his counsel is adequate because he has substantial class action experience. *See Appendix 4* (Decl. of Thomas J. Lyons, Jr.) at Exhibit 2 (Decl. of J. Rosen). *Compare* [**ECF No. 64** at p.8, ("Plaintiff's attorneys are experienced and capable, and have served

---

Rule 23(b)(3) as that requirement is ordinarily applied, it must be noted that the superiority analysis is relaxed in the settlement context because in that context trial management considerations are not a factor. *See Amchem*, 521 U.S. at 620 (in settlement context, "a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial") (citations omitted).

as class counsel in similar consumer class actions before. [**ECF No. 29-3** at ¶¶18–19] Plaintiff himself has filed an affidavit attesting to his understanding of his obligations as class representative. [**ECF No. 29-2**.]") Accordingly, in addition to allowing the Class certified by the Court to remain certified, it is appropriate to include Plaintiff Rosen and his counsel as an additional class representative and class counsel for the Class.

### IV. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23(e) provides that "[a] class action shall not be dismissed or compromised without the approval of the court." The procedure for review of a proposed class action settlement is a well-established two-step process. Newberg & Conte, 4 *Newberg on Class Actions*, §11.25, at 38-39 (4th Ed. 2002); *see also* David F. Herr, *Annotated Manual for Complex Litigation,* §21.632 (4th ed. 2004).

The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." *Newberg*, §11.25, at 38-39 (*quoting Manual for Complex Litigation*, §30.41 (3rd Ed.)); *In re Syncor ERISA Litig*., 516 F.3d 1095, 1110 (9th Cir. 2008); *Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV, 2007 WL 2330895 at *4 (S.D. Fla. May 14, 2007). This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. *Newberg*, §11.25, at 38-39; *Fresco*, 2007 WL 2330895 at *4 ("A proposed settlement should be preliminarily approved if it is within the range of possible approval or, in other words, if there is probable cause to notify the class of the proposed settlement.") (internal quotations omitted).

The preliminary approval stage is an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from

the settling Parties. *Manual for Complex Litigation,* § 21.632 (4th ed. 2004). If the court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process—the final approval hearing. *Newberg*, §11.25, at 38-39.

There is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 154 (M.D. Fla. 1998), *aff'd,* 893 F. 2d 347 (11th Cir. 1998); *Access Now, Inc. v. Claires Stores, Inc.*, No. 00-14017-CIV, 2002 WL 1162422 at *4 (S.D. Fla. May 7, 2002). With a settlement, the class members are ensured a benefit as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).

Although the Court certainly has discretion in deciding whether to approve a proposed settlement, proper consideration should be given to the consensual decision of the Parties. *Warren*, 693 F. Supp. at 1054 ("The Court is affording great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation"). Ultimately, the Court should approve a class action settlement if it is fair, adequate, and reasonable, and not the product of collusion. *Bennett v. Behring*, 737 F.2d 982, 986 (11th Cir. 1984); *Access Now,* 2002 WL 1162422 at *4. When conducting this analysis, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001).

In determining whether the proposed settlement is "fair, adequate, and reasonable," the following factors are often considered: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which settlement is

fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Bennett*, 737 F.2d at 986; *see also In re Sunbeam*, 176 F. Supp. 2d at 1329. Finally, in considering the preliminary approval issue, courts need not "reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).

Here, the proposed settlement is fair, adequate, and reasonable and should be viewed as well "within the range of possible approval." This is demonstrated by the amount of monetary relief made available to the class, and the fact that the agreement was the result of hard fought arms' length negotiations by experienced counsel conducted through a seasoned third party mediator.

The monetary relief secured on behalf of the class is substantial. Each class member who submits a timely claim form will receive a pro rata share of the Settlement Fund in an amount estimated to be around $265. *Appendix 1* at Exhibit 2, p.1, and Exhibit 3, p.1. This compares to a potential range of statutory damages recovery of $100-$1000 against the inability to prove actual harm, meaning that even if the case went to trial and was successful, there is a good chance class members would not recover more than the minimum $100 statutory damage award.

The non-monetary benefit of this case is also substantial. In response to this lawsuit, Spirit had IBM reprogram Spirit's airport kiosks to stop printing more than the last five digits of credit and debit card account numbers on transaction receipts nationwide.

The Parties reached the instant settlement after hard-fought litigation and negotiation, and based upon the information produced by Spirit in discovery.[6] Class Counsel and Mr. Rosen's

---

[6] *See Appendix 2* (Decl. of Scott D. Owens) at ¶¶28-29; *Appendix 3* (Decl. of Michael S. Hilicki)

11

counsel are confident in the strength of the claims alleged in the complaint and that Plaintiffs and the Class would ultimately prevail at trial.[7] Nevertheless, litigation is inherently unpredictable and the outcome of a trial is never guaranteed.

Indeed, Plaintiff and the class members face significant risks in taking this matter to trial, including the possibility that the case may be defeated at the summary judgment stage, and of course the possibility that at trial the fact finder concludes that Spirit's alleged violation of FACTA here was not willful.[8] Moreover, Spirit is represented by competent and formidable counsel. In the end, when the strengths of the Plaintiffs' claims are weighed against the legal and factual obstacles present, and the complexity of class action practice, there should be no doubt that the proposed settlement is in the best interest of class members.[9] And, given the high value of this settlement – believed to be one of the largest cash FACTA settlements in history - Plaintiffs expect no significant opposition to it by any class member.

Class Counsel had ample foundation upon which to evaluate the proposed settlement. These lawsuits have been pending since mid-2014 and the discovery obtained is substantial, as the time for conducting discovery was near its conclusion when this settlement was reached. Therefore, each party had the necessary information to evaluate the strengths and weaknesses of

---

at ¶¶8-11; *Appendix 4* (Decl. of Thomas J. Lyons, Jr.) at ¶6, ¶11.

[7] *See Appendix 2* (Decl. of Scott D. Owens) at ¶28; *Appendix 3* (Decl. of Michael S. Hilicki) at ¶12; *Appendix 4* (Decl. of Thomas J. Lyons, Jr.) at ¶7.

[8] Plaintiffs and the Class also face the risk that the Supreme Court, in *Robins v. Spokeo*, could issue a decision that effectively determines that Art. III standing is lacking in this case, and thus that the case must be re-filed and litigated in state court from scratch. Likewise, the Supreme Court currently is also considering a case involving class certification issues, *Tyson Foods, Inc. v. Bouaphakeo*, No. 14-1146, which thus could affect the Court's decision to certify the Class here.

[9] *See generally Appendix 2* (Decl. of Scott D. Owens) at ¶¶22-23; *Appendix 3* (Decl. of Michael S. Hilicki) at ¶¶12-14; *Appendix 4* (Decl. of Thomas J. Lyons, Jr.) at ¶¶8-12.

their cases in order to discuss settlement effectively. And even then the settlement was only reached after substantial motion practice, mediation and discussions over settlement terms and language. In its totality, this settlement is well within the range of approval and should be preliminarily approved by this Court. Accordingly, Plaintiffs request the entry of the proposed preliminary approval order attached to the Settlement Agreement as Exhibit 1. *See Appendix 1* at Exhibit 1.

## VI. THE PROPOSED CLASS NOTICE SHOULD BE APPROVED

The Agreement includes notice procedures designed to directly reach each member of the class as is practicable. *Appendix 1* at § IV.B. First, after entry of the Preliminary Settlement Approval Order, the Claims Administrator shall cause a notice (*Appendix 1* at Exhibit 2) to be sent via regular mail and email to class members based on Spirit's billing name and address records and contact information obtained from third-party booking companies like Orbitz, to advise class members about the settlement and direct them to the Website where they can obtain additional information about it, including how to comment on the settlement or opt out of it, and how to make a claim.

Second, the Claims Administrator will establish a settlement website that supplements the mail notice with comprehensive information about the settlement (*Appendix 1* at § IV.B.2. and Exhibit 3), a claim form class members can use to make a claim and a procedure for filing claims online (*Appendix 1* at Exhibit 5), plus a copy of the Complaint, the Settlement Agreement, the Preliminary Settlement Approval Order for the class members to review. *Appendix 1* at § IV.B.2. The notice posted on the site provides settlement class members with a detailed explanation of their options, to enable them to make an informed decision. The Claims Administrator will also establish and oversee a toll-free phone number for Settlement Class Members to contact to ask questions. *Appendix 1* at Exhibit 3, §5. A mailed notice combined with a Website for further

13

information is the commonly approved method for giving notice in class settlements. *See*, *e.g.*, *Soto v. The Gallup Organization, Inc.*, No. 13-cv-61747-MGC (S.D. Fla. June 6, 2015) at ECF No. 79, ¶9; *Guarisma v. Adcahb Medical Coverages, Inc.*, No. 13-cv-21016-FAM (S.D. Fla. Mar. 2, 2015) at ECF No. 91, ¶11; *De Los Santos v. Millward Brown, Inc.*, No. 13-cv-80670-DPG (S.D. Fla. Feb. 10, 2015) at ECF No. 77, ¶ 11; *Curry v. AvMed, Inc.*, No. 10-cv-24513, 2014 U.S. Dist. LEXIS 48485 at *3 (S.D. Fla. Feb. 28, 2014); *Collins v. Erin Capital Management, LLC*, No. 12-cv-22839-CMA (S.D. Fla. Dec. 20, 2013) at ECF No. 133, ¶ 5; *Cooper v. Nelnet, Inc.*, 14-cv-00314-RBD (M.D. Fla. Feb. 26, 2015) at ECF No. 72, ¶10; and *Legg v. E-Z Rent A Car, Inc.*, No. 14-cv-01716-PGB (M.D. Fla. May 28, 2015) at ECF No. 64, ¶10.

Third, if necessary, the Claims Administrator will arrange for the publication of additional notice to the class to ensure that total notice penetration for the Class is adequate and reaches a minimum of 70% as provided for by Federal Judicial Center guidelines. *Managing Class Action Litigation: A Pocket Guide for Judges*, Rothstein, Barbara J. and Thomas E. Willging, Third Edition, Federal Judicial Center, 2010, at p. 27.

Fourth, the Claims Administrator will serve upon the Attorneys General of each of the fifty United States and the Attorney General of the United States notice of the proposed settlement, pursuant to 28 U.S.C. § 1715, within ten (10) days after the proposed settlement is filed. *Appendix 1* at § IV.B.6. In short, the notice plan here should be approved.

## V. THE SELECTION OF A *CY PRES* RECIPIENT

The Settlement Agreement aims to distribute all proceeds available to pay claims to be paid out to the Settlement Class Members, either in response to claims made or as part of a second distribution of any funds remaining from settlement checks that are uncashed 90 days after the checks' expiration dates. However, if any funds still remain after the second distribution

and/or the amount of funds remaining is too insubstantial to feasibly distribute to the Settlement Class Members, the Settlement Agreement directs those funds to be paid to a charity as a *cy pres* recipient on behalf of the class. *Appendix 1* at §III.D.iii.

The Agreement further provides that the parties should identify their proposed *cy pres* recipients in the event they could not agree on a selection, so that the Court can choose the recipient. At this point the parties have not reached an agreement. Accordingly, their competing proposals are as follows:

Plaintiffs' Proposal:

Because FACTA exists to protect consumer privacy and avoid identity theft, Plaintiffs propose U.S. PIRG be the charity that receives any funds available to be distributed to a *cy pres* recipient because it is more closely aligned with the class members regarding the issues and claims presented in this case due its substantial consumer privacy protection and consumer anti-identity theft efforts. See http://www.uspirg.org/search/site/data%20breach.

Defendant's Proposal:

The Sedona Conference, Working Group 11, Data Security and Privacy Liability. The Sedona Conference is a 501(c)(3) organization. The mission of its Working Group 11 is to identify and comment on trends and develop best practices in data security and privacy law, in an effort to help organizations prepare for and respond to data breaches, and to assist attorneys and judicial officers in resolving questions of legal liability and damages. See https://thesedonaconference.org/wgs.

## VI. THE MATTER SHOULD BE SET FOR A FINAL APPROVAL HEARING

After adequate notice is given to the Settlement Class and the government as required by 28 U.S.C. §1715, a final approval hearing should be held for the Court to confirm that the

Settlement is fair, reasonable and adequate. *See*, *e.g.*, *Bennett*, 737 F.2d at 985; *Torres v. Bank of Am. (In re Checking Account)*, 830 F. Supp. 2d 1330, 1336 (S.D. Fla. 2011).

## VII. DEFENDANT DOES NOT OBJECT TO THE RELIEF REQUESTED

Aside from the selection of a potential *cy pres* recipient, discussed above, Spirit supports the relief Plaintiffs request in in this motion. Spirit agreed to the terms of the settlement and, although Spirit did not join this motion, Plaintiffs gave Spirit a draft before filing it, and Spirit did not object to it.

## VIII. SUGGESTED SCHEDULE

Because Sprint states that it does not have addresses for all class members, the parties are currently working with third party travel companies and credit reporting companies to obtain contact information for the balance of the class. This may entail the parties asking this Court to issue an order allowing the credit reporting companies to release such information. As such, the parties suggest the following general scheduling outline for evaluating and concluding this settlement:

| | |
|---|---|
| _____, 2015<br>[45 days after the date of the Preliminary Approval Order] | Deadline for notice to be provided to the Class members |
| _____, 2016<br>[60 days after the Notice Deadline] | Deadline for Class members to file any objection, to file any notice of appearance or intent to appear (individually or by counsel), or to submit any request for exclusion (Opt-Out and Objection Deadline) |
| _____, 2016<br>[60 days after the Notice Deadline] | Deadline for Settlement Class Members to Submit a Claim Form (Claim Period) |
| _____, 2016<br>[30 days after the Opt-Out and Objection Deadline] | Deadline for Parties to file the following:<br>(1) List of persons who made timely and proper requests for exclusion (under seal);<br>(2) Proof of Class Notice; and<br>(3) Motion and memorandum in support of final approval and related matters, including responses to |

16

| | |
|---|---|
| | any objections. |
| _____, 2016 at \_\_\_\_ \_.m.<br>[No earlier than 149 days from the entry of the Preliminary Approval Order] | Final Approval Hearing |

## VIII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court (1) appoint Plaintiff Rosen as an additional class representative, (2) appoint Rosen's attorney as additional class counsel, (3) preliminarily approve the proposed settlement and notice plan, select the charity *cy pres* recipient of any unclaimed funds pursuant to section V above, and set the matter for a fairness hearing by entering the proposed order attached as Exhibit 1 to the Settlement Agreement (*see Appendix 1* at Exhibit 1), and (4) grant such further relief as deemed just.

Respectfully Submitted,

*/s/Scott D. Owens*
SCOTT D. OWENS, Esq.
*Attorney for Plaintiff Legg*
*Appointed Class Counsel*
3800 S. Ocean Drive, Ste. 235
Hollywood, FL 33019
Tel: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com

MICHAEL S. HILICKI, Esq.
(*pro hac vice*)
*Attorney for Plaintiff Legg*
*Appointed Class Counsel*
55 W. Monroe Street
Suite 3390
Chicago, IL 60603
Tel:  312-726-1092
mhilicki@keoghlaw.com

THOMAS J. LYONS, JR., Esq.
(*pro hac vice*)
*Attorney for Plaintiff Rosen*

17

Consumer Justice Center, P.A.
367 Commerce Court
Vadnais Heights, MN 55127
Tel: 612-200-1495
tommycjc@aol.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 26, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this October 26, 2015, in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: */s/ Scott D. Owens*
**Scott D. Owens, Esq**