### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION

### CASE NO. 0:14-cv-61978-JIC (*Legg*)
### CASE NO. 0:15-cv-61375-JIC (*Rosen*)

| | |
|---|---|
| CHRISTOPHER W. LEGG, <br> individually and on behalf of all others similarly situated, | ) <br> ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) <br> ) |
| SPIRIT AIRLINES, INC., a Delaware corporation, | ) <br> ) <br> ) |
| Defendant. | ) <br> ) |
| JOSEPH ROSEN, <br> individually and on behalf of all others similarly situated, | ) <br> ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) <br> ) |
| SPIRIT AIRLINES, INC., a Delaware corporation, | ) <br> ) <br> ) |
| Defendant. | ) <br> ) |

### MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARD OF ATTORNEYS' FEES AND EXPENSES

**TABLE OF CONTENTS**

I.      INTRODUCTION..................................................................................................... 1

II.     SUMMARY OF THE LITIGATION, MEDIATION & SETTLEMENT................... 3

III.    SETTLEMENT TERMS.............................................................................................6
        A.    Notice and Settlement Administration.......................................................6
        B.    Incentive Payment......................................................................................6
        C.    Payment of Attorneys' Fees and Expenses ..............................................7
        D.    Release .......................................................................................................7

IV.     THE NOTICE PROVIDED WAS MORE THAN SUFFICIENT............................ 7

V.      THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND
        THUS IT MERITS FINAL APPROVAL ................................................................ 9
        A.    The Agreement Is the Result of Arm's Length Negotiations between the
              Parties with the Assistance of Experienced Mediators. ........................ 11
        B.    The Settlement Meets Each of the Eleventh Circuit's *Bennett* Factors. .............. 11
              1.    Likelihood of Success at Trial. ................................................. 11
              2.    Range of Possible Recovery and the Point at which the Agreement
                    Is Fair, Reasonable, and Adequate ......................................... 13
              3.    The Complexity and Expense of Further Litigation .................. 14
              4.    Substance and Amount of Opposition to Agreement................. 14
              5.    Stage of Proceedings at which Settlement Achieved ................ 15

VI.     THE ATTORNEYS' FEE AND EXPENSES REQUESTED ARE
        REASONABLE ...................................................................................................... 16
        A.    The Fee Amount is Reasonable as a Percentage of the Total Settlement............ 16
        B.    The Fee and Expense Amount Is Also Reasonable Under the *Johnson/Camden I*
              Factors....................................................................................................19
              1.    The Time and Labor Required, Preclusion from Other Employment
                    and the Time Limits Imposed Justify the Cost and Fee Amount...............19
              2.    The Case Involved Difficult Issues; the Risk of Nonpayment
                    and Not Prevailing on the Claims was High............................ 20
              3.    Class Counsel Achieved an Excellent Result for the
                    Settlement Class...................................................................21
              4.    The Requested Fee is Consistent with Other Consumer
                    Class Settlements.................................................................22
              5.    This Case Required a High Level of Skill ...............................22

**VII.**   **SELECTION OF A CY PRES RECIPIENT AND RESOLVING REQUESTS FOR REIMBURSEMENT BY THIRD PARTIES FOR SUBPOENAS.** ................................................................................................ 23

**VIII.**   **CONCLUSION** ............................................................................................. 24

## **TABLE OF AUTHORITIES**

**Cases**

*Access Now, Inc. v. Claire's Stores, Inc.*,
　　00-cv-14017, 2002 WL 1162422 (S.D. Fla. May 7, 2002)........................................... 3, 15

*Agne v. Papa John's International Inc. et al*,
　　2:10-cv-01139 (D. Wa.) ................................................................................................... 1

*Aliano v. Joe Caputo & Sons - Algonquin, Inc.*,
　　No. 09 C 910, 2011 U.S. Dist. LEXIS 48323 (N.D. Ill. May 5, 2011) ..................... 12, 20

*Allapattah Servs., Inc. v. Exxon Corp.*,
　　No. 91-cv-0986, 2006 WL 1132371 (S.D. Fla. Apr. 7, 2006) ............................. 15, 17, 21

*Atkinson v. Wal-Mart Stores, Inc.*,
　　2011 WL 6846747 (M.D. Fla. Dec. 29, 2011)................................................................ 22

*Behrens v. Wometco Enters., Inc.*,
　　118 F.R.D. 543 (S.D. Fla. 1988) .................................................................................... 14

*Bennett v. Behring Corp.*,
　　737 F.2d 982 (11th Cir. 1984) .................................................................................. *passim*

*Boeing Co. v. Van Gemert*,
　　444 U.S. 472 (1980)................................................................................................... 16, 18

*Camden I Condo Ass'n v. Dunkle*,
　　946 F.2d 768 (11th Cir. 1991) ................................................................................. *passim*

*Cohn v. Nelson*,
　　375 F. Supp. 2d 844 (E.D. Mo. 2005)............................................................................ 16

*Cooper v. NelNet, Inc.*,
　　14-cv-314-RBD-DAB, Dkt. 85 (M.D. Fla. Aug. 4, 2015)................................................. 7

*Cotton v. Hinton*,
　　559 F.2d 1326 (5th Cir. 1977) ......................................................................................... 3

*Creative Hosp. Ventures, Inc. v. U.S. Liab. Ins. Co.*,
　　655 F. Supp. 2d 1316, 1333 (S.D. Fla. 2009) .................................................................. 3

*De Los Santos v Millward Brown Inc.*,
　　9:13-CV-80670-DPG (S.D. Fla. 2015) .......................................................................... 22

iv

*Faught v. Am. Home Shield Corp.*,
    668 F.3d 1233 (11th Cir. 2011)................................................................ 8, 17

*Figueroa v. Sharper Image Co.*,
    517 F. Supp.2d 1292 (S.D. Fla. 2007) .......................................... 13

*Francisco v. Numismatic Guar. Corp.*,
    No. 06-61677, 2007 U.S. Dist. LEXIS (S.D. Fla. Jan. 31, 2007) ..................................... 21

*Gevaerts v. TD Bank, N.A.*,
    No. 14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354 (S.D. Fla. Nov. 5, 2015) ...... 7, 17

*Greco v. Ginn Dev. Co.*,
    2015 U.S. App. LEXIS 20867 (11th Cir. Dec. 2, 2015)..................................... 2

*Guarisma v. ADCAHB Medical Coverages, Inc., et al.*,
    1:13-cv-21016 (S.D.FL. June 24, 2015) .......................................... 22

*Gutter v. E.I. DuPont De Nemours & Co.*,
    No. 1:95–cv–02152–ASG, ECF 626 (S.D. Fla. May 30, 2003) ................................ 17, 22

*Hamilton v. SunTrust Mortg., Inc.*,
    2014 U.S. Dist. LEXIS 154762 (S.D. Fla. Oct. 24, 2014).......................................... 16, 18

*Hanlon v. Palace Entm't Holdings*, LLC,
    2012 U.S. Dist. LEXIS 364 (W.D. Pa. Jan. 3, 2012)..................................... 13

*Harris v. Mexican Specialty Foods, Inc.*,
    564 F.3d 1301 (11th Cir. 2009) .......................................... 3,4

*Hensley v. Eckerhart*,
    461 U.S. 424  (1983).......................................... 16

*In re Checking Account Overdraft Litig.*,
    830 F. Supp. 2d 1330 (S.D. Fla. 2011) ..........................................11, 17, 19, 21

*In re CP Ships Ltd. Sec. Litig.*,
    578 F. 3d 1306 (11th Cir. 2009).......................................... 8

*In re Domestic Air Transport. Antitrust Litig.*,
    148 F.R.D. 297 (N.D. Ga. 1993) .......................................... 10

*In re Mexico Money Transfer Litig.*,
    164 F. Supp. 2d 1002, 1021 (N.D. Ill. 2000) .......................................... 15

*In re Shell Oil Refinery*,
    155 F.R.D. 552 (E.D.La.1993)........................................................................ 14

*In re Southwest Airlines Voucher Litig.*,
    No. 11 C 8176, 2013 U.S. Dist. LEXIS 120735 (N.D. Ill. Dec. 6, 2013) ....................... 20

*In re Sturm, Ruger & Co., Inc.*,
    No. 09cv1293, 2012 U.S. Dist. LEXIS 116930 (D. Conn. Aug. 20, 2012)....................... 2

*In re Sunbeam Sec. Litig.*,
    176 F.Supp.2d 1323 (S.D. Fla. 2001) ...................................................... *passim*

*In re Terazosin Hydrochloride Antitrust Litig.*,
    No. 1:99–md–01317–PAS, ECF 1557 (S.D. Fla. Apr. 19, 2005)............................. 17, 22

*In re U.S. Oil & Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) .......................................................................... 9

*Ingram v. The Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001)...................................................................... 11

*Ira Holtzman, C.P.A, & Associates Ltd. v. Turza*,
    728 F.3d 682 (7th Cir. 2013) ......................................................................... 7

*Isby v. Bayh*,
    75 F.3d 1191, 1200 (7th Cir. 1996) ...............................................................20

*Johnson v. Georgia Highway Expr., Inc.*,
    488 F.2d 714 (5th Cir. 1974) ..................................................................... *19*

*Katz v. ABP Corp.*,
    2014 U.S. Dist. LEXIS 141223 (E.D.N.Y. Oct. 3, 2014)................................. 13

*Legg v. Laboratory Corp. of America*,
    14-cv-61543-RLR, Dkt. 227 (S.D. Fla. Feb. 18, 2016) ................................ 1, 22

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*
    540 F.2d 102 (3d Cir. 1976)......................................................................... 21

*Lipuma v. Am. Express Co.*,
    406 F. Supp. 2d 1298, 1315 (S.D. Fla. 2005) ........................................... *passim*

*Long v. Joseph-Beth Grp., Inc.*,
    No. 07-cv-00443 (W.D. Pa. May 5, 2007).......................................................... 13

*Lumas v. Sw. Airlines Co.*,
    No. 3:13-cv-01429-CRB (S.D. Cal. 2013) ............................................................ 1, 14

*Morrison v. Nat'l Australia Bank Ltd.*,
    561 U.S. 247 (2010) ................................................................................................... 8

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ................................................................................................... 8

*Muransky v. Godiva Chocolatier, Inc.*,
    15-cv-60716-WPD (S.D. Fla.) .................................................................................. 24

*Newman v. Sun Capital Corp.*,
    No. 09-cv-445, 2012 U.S. Dist. LEXIS 121843 (M.D. Fla. Aug. 28, 2012) .................... 12

*North Suburban Chiropractic Clinic Ltd. v. Rx Security, Inc.*,
    1:13-cv-06897 (N.D. Ill.) ............................................................................................. 1

*North Suburban Chiropractic Clinic, Ltd v. Zydus Pharmaceuticals (USA) Inc.*,
    1:13-cv-03105 (N.D. Ill.) ............................................................................................. 1

*Palamara v. Kings Family Restaurants*,
    2008 U.S. Dist. LEXIS 33087 (W.D. Pa. Apr. 22, 2008) ................................................ 13

*Pinto v. Princess Cruise Lines, Ltd.*,
    513 F. Supp. 2d 1334 (S.D. Fla. 2007) ...................................................................... 21

*Perez v. Asurion Co.*,
    501 F. Supp.2d 1360, 1380 (S.D. Fla. 2007) .................................................... 11, 14, 15

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797, 812 (1985) ............................................................................................. 9

*Phillips Randolph Enters., LLC v. Rice Fields*,
    No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027 (N.D. Ill. Jan. 11, 2007) ..................... 12, 20

*Poertner v. Gillette Co.*,
    618 F. App'x 624, 631 (11th Cir. 2015) ...................................................................... 18

*Redman v. Radioshack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ................................................................................... 3, 4

*Spicer v. Chi. Bd. of Options Exchange, Inc.*,
    844 F.Supp. 1226, 1267-68 (N.D. Ill. 1993) ................................................................. 7

*Spillman v. RPM Pizza, LLC*,

    No. 10-349, 2013 U.S. Dist. LEXIS 72947 (M.D. La. May 23, 2013) ............................ 1

*Stalcup v. Schlage Lock Co.*,

    505 F.Supp.2d 704 (D. Colo. 2007) ................................................................. 20

*Todd v. Retail Concepts Inc.*,

    2008 U.S. Dist. LEXIS 117126 (M.D. Tenn. Aug. 22, 2008) ........................................ 13

*U.S. v. Alabama*,

    271 F. App'x 896 (11th Cir. 2008) ................................................................ 8

*Warren v. City of Tampa*,

    693 F.Supp. 1051 (M.D. Fla. 1988) ......................................................... 3, 9, 10

*Waters v. Int'l Precious Metals Corp.*,

    190 F.3d 1291 (11th Cir.1999) ................................................................... 17

*Wolff v. Cash 4 Titles*,

    No. 03-cv-22778, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) .................................... 17

*Wood Dale Chiropractic, Ltd. V. DrFirst.com, Inc.*,

    1:12-cv-00780, (N.D. Ill) ........................................................................ 1

*Yates v. Mobile Cnty. Pers. Bd.*,

    719 F.2d 1530 (11th Cir. 1983) ................................................................. 20

## Other Authorities

Bureau of Justice Statistics, U.S. Dep't of Justice,

    *Victims of Identity Theft, 2014*, at 1 (Sept. 2015) ............................................... 4

Congressional Record, Vol. 154, No. 78 Cong. Rec. H3730 (May 13, 2008) ............................ 3

Javelin Strategy & Research, 2015 Identity Fraud: Protecting Vulnerable Populations ............... 4

McLaughlin on Class Actions

    §6:10 (10th ed.) ............................................................................... 15

NEWBERG ON CLASS ACTIONS ................................................................ 7, 18

Presidential Signing Statement,

    Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003) ........................................... 3

The Role of Opt-Outs and Objectors in Class Action Litigation

    57 VAND. L. REV. 1529, 1550 (2004) ........................................................ 2

## I.      INTRODUCTION

Plaintiffs, Christopher Legg and Joseph Rosen, individually and as representatives of the Settlement Class, submit this motion and memorandum in support of final approval of the class action settlement with Defendant, Spirit Airlines, Inc. ("Spirit"), as to the claims asserted under the Fair and Accurate Credit Transaction Act (FACTA), which the Court preliminarily approved on October 28, 2015. [ECF 118]. A true and correct copy of the Settlement Agreement and Release ("Agreement") is attached as *Appendix 1*.

The Agreement provides the second largest all cash settlement in the history of FACTA.[1] Spirit will pay seven-and-a-half million dollars ($7,500,000.00), the class members were sent notice inviting them to submit a claim for a portion of the fund and, to date, an estimated more than 70,000 class members have done so. *See Appendix 2* (Declaration of Claims Administrator) at ¶12.[2] That is almost 23% of the number of people who were sent direct mail notice of the settlement, a terrific result. The claim rate here is much higher than the rate in many other consumer statutory damage cases that have been granted final approval,[3] and thus a strong endorsement of the settlement by the class. None of the settlement funds will revert back to Spirit.

The Court set June 20, 2016 as the date to submit exclusions and file objections. [ECF 128, ¶2]. Out of approximately 370,000 class members, none objected except for one who merely filed a philosophical objection to the lawsuit's existence, not the settlement. [ECF 140]

---

[1] At the time this settlement was negotiated, the largest all cash FACTA settlement that was approved was *Lumas v. Sw. Airlines Co.*, No. 3:13-cv-01429-CRB (S.D. Cal. 2013). In that case, Southwest estimated that the class total was between 880,000 and 2,200,000 transactions and the entire settlement was for $1.8 million. The largest all cash settlement was for $11,000,000. *Legg v. Laboratory Corp. of America*, 14-cv-61543-RLR, Dkt. 227 (S.D. Fla. Feb. 18, 2016) (final approval granted). ("*Lab*") The difference between the settlements in *Lab* and *Spirit* is mostly due to the fact that *Lab* had a larger class. Regardless both settlements are record breaking terrific results.

[2] The Administrator is still evaluating the claims to eliminate any made by non-class members, with 26,971 claims remaining to be evaluated. *Id.* However, even if these all of these claims were excluded (which is unlikely), the resulting claim rate would be greater than 14%, and thus still exceptional. See fn. 3, below.

[3] *See, e.g., Wood Dale Chiropractic, Ltd. v. DrFirst.com, Inc.*, 12-cv-780, (N.D. Ill) (1.97 % of the class made claims); *North Suburban Chiropractic Clinic, Ltd v. Zydus Pharma. (USA) Inc.*, 13-cv-3105 (N.D. Ill.) (.13% of the class made claims); *North Suburban Chiropractic Clinic Ltd. v. Rx Security, Inc.*, 13-cv-6897 (N.D. Ill.) (.53% of the class made claims); *Agne v. Papa John's Int'l, Inc.*, 10-cv-1139 (D. Wash.) (1.52% of the class made claims); *Spillman v. RPM Pizza, LLC*, 10-cv-349 (M.D. La.) (.07% of the class made claims).

and *Appendix 2* (Claims Administrator Declaration) at ¶14.[4] Also, only one class member requested exclusion. *Appendix 2* at ¶10). Finally, no governmental entity objected to the settlement after receiving the required CAFA notice. Such an extraordinarily "low percentage of objections points to the reasonableness of a proposed settlement and supports its approval." *Lipuma v. American Express Co*., 406 F.Supp.2d 1298, 1324 (S.D. Fla. 2005).[5]

As shown below, this settlement easily meets the standards for final approval. In granting preliminary approval, the Court preliminarily found the Agreement was within the range of reasonableness, and thus that the class should be given notice. [ECF 118, p.2, ¶1]. Nothing has changed to alter that finding. To the contrary, the class's reaction to the settlement has indicated overwhelming support for the Agreement.[6]

The Agreement is the result of arm's-length negotiations between Spirit and experienced Class Counsel, and was only reached after substantial discovery, motion practice, a ruling on class certification, a mediation with Judge Wayne R. Andersen (ret.) and a second mediation with Mark Buckstein, both of whom are well-regarded as skilled mediators. As a result, the Agreement is presumptively fair, reasonable and adequate. *In re Sturm, Ruger & Co., Inc.*, 2012 U.S. Dist. LEXIS 116930 at *12 (D. Conn. Aug. 20, 2012) ("the settlement was reached by experienced, fully-informed counsel after arm's length negotiations with the assistance of a mediator and therefore the parties are entitled to a presumption that the settlement was fair, reasonable and adequate.")

Likewise, although the approval of a class action settlement is a matter for the Court's discretion, proper consideration should be given to the consensual decision of the parties. *See Greco v. Ginn Dev. Co.*, 2015 U.S. App. LEXIS 20867 at *9 (11th Cir. Dec. 2, 2015) (unpub.)

---

[4] One professional objector's attorney, Patrick Sweeney, also filed an objection for his daughter. However, she is not a class member, and thus she has no standing to object. After this was brought to his attention, Mr. Sweeney withdrew the "objection." [ECF 141]. This "objection" is further addressed in Plaintiffs' separate response to the objections.

[5] The average number of objections to consumer class action settlements is 233. In a settlement of this magnitude, the Court should expect to receive around 35 objections (extrapolating from the average of 4.7 objectors per $1 million in consumer recovery). *See* Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529, 1550 (2004).

[6] Subsequent events have also reinforced the correctness of the Court's decision to grant class certification, including the determination of Class Counsel's adequacy, which has been enhanced by their successful resolution of the *Lab* case, the largest all cash FACTA settlement in history. *See* fn. 1, above.

2

("a district court may also rely upon the judgment of experienced counsel for the parties. . . . Indeed, absent fraud, collusion, or the like, the district court 'should be hesitant to substitute its own judgment for that of counsel.'"), quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Warren v. City of Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988) *aff'd*, 893 F.2d 347 (11th Cir. 1989) ("The Court is affording great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation"). Ultimately, a class action settlement should be approved if it is fair, reasonable and adequate, and not the product of collusion. *Bennett v. Behring*, 737 F.2d 982, 986 (11th Cir. 1984); *Access Now, Inc. v. Claire's Stores, Inc.*, 2002 WL 1162422 at *4 (S.D. Fla. May 7, 2002). When conducting this analysis, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F.Supp.2d 1323, 1329 (S.D. Fla. 2001). As shown below, this settlement easily merits final approval.

II.    **SUMMARY OF THE LITIGATION, MEDIATION & SETTLEMENT**

FACTA "is aimed at protecting consumers from identity theft." *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1306 (11th Cir. 2009). Congress determined a credit or debit card number is the "single most crucial piece of information a criminal would need to perpetrate account fraud." Vol. 154, No. 78 Cong. Rec. H3730 (May 13, 2008) (Rep. Mahoney). Congress also determined the inclusion of excess account information on a transaction receipt enables anyone who sees the receipt to use it to discover more information about the consumer. *See Redman v. Radioshack Corp.*, 768 F.3d 622, 626 and 639 (7th Cir. 2014) ("the less information the receipt contains the less likely is an identity thief who happens to come upon the receipt to be able to figure out the cardholder's full account information"). In signing FACTA into law, President Bush likewise remarked that "[s]lips of paper that most people throw away should not hold the key to their savings and financial secrets." *Creative Hosp. Ventures, Inc. v. U.S. Liab. Ins. Co.*, 655 F. Supp. 2d 1316, 1333 (S.D. Fla. 2009), *subsequently rev'd on other grounds*, 444 F. App'x 370 (11th Cir. 2011), citing Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003).

At that time, identity theft had "reached almost epidemic proportions." H.R. Rep. No. 108-263 at 25 (2003). Over 27 million Americans had been victims of identity theft in the past five years, and the estimated cost to consumers and the economy was over fifty billion dollars

3

annually. *See* Federal Trade Commission, *Identity Theft Survey Report* (2003).[7] Every year, identity theft results in billions of dollars of loss, which has a significant effect on consumers and the economy. *See* 2015 Identity Fraud Report, *infra* fn.7, at pp.7, 14.[8] Furthermore, the costs of financial fraud, identity theft, and even the fear of identity theft, have a powerful psychological effect on consumers, as "36% of identity theft victims reported moderate or severe emotional distress as a result of the incident." Bureau of Justice Statistics, U.S. Dep't of Justice, *Victims of Identity Theft, 2014*, at 1 (Sept. 2015).

To help address this problem, Congress decided to "require the truncation of credit and debit card account numbers on electronically printed receipts to prevent criminals from obtaining easy access to such key information," and "limit the number of opportunities for identity thieves to 'pick off' key card account information." S. Rep. No. 108-166, at pp. 3 and 13 (2003). Accordingly, Congress created FACTA. *See Redman*, 768 F.3d at 639 ("identity theft is a serious problem, and FACTA is a serious congressional effort to combat it.").

Moreover, to encourage private litigants to enforce FACTA's requirements, Congress incorporated FACTA into the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.* ("FCRA"), which entitles a successful plaintiff to statutory damages, costs and attorneys' fees for any "willful" violation of the law. *See Harris, Inc.,* 564 F.3d at 1306-7, *citing* 15 U.S.C. §1681n(a)(l)(A), and (2). Consistent with this intent, Plaintiffs brought these lawsuits to resolve Spirit's alleged systematic violation of FACTA's prohibition against printing more than the last five digits of credit and debit cards on transaction receipts issued by its airport kiosks. [ECF 1].

The litigation was hard fought throughout. In July and August 2014, Plaintiff Rosen and Plaintiff Legg filed their complaints. [ECF 1, 79-1]. Extensive discovery ensued. In addition to answers to written discovery, Spirit produced more than 175,000 pages of documents, and the

---

[7] In 2014 and 2013, respectively, about 12.7 million and 13.1 million consumers suffered identity theft. See Javelin Strategy & Research, 2015 Identity Fraud: Protecting Vulnerable Populations, available at https://www.javelinstrategy.com/press-release/16-billion-stolen-127-million-identity-fraud-victims-2014-according-javelin-strategy. [2015 Identity Fraud Report]. In 2010, about 7% of households had at least one member who experienced one or more types of identity theft. Bureau of Justice Statistics, U.S. Dep't of Justice, Identity Theft Reported by Households, 2005-2010, at 1 (Nov. 2011).

[8] In addition, according to a 2012 FTC report, Florida ranks No. 1 for identity theft among the 50 states, with 361.3 complaints per 100,000 people. That's 86 percent more than Georgia, which ranks a distant second. Also, nine of the top 10 metro areas for identity theft are in Florida, according to the report. First is the Miami area with 645.4 complaints per 100,000 people.http://www.wptv.com/money/consumer/identity-theft-florida-ranks-no-1-in-nation-for-id-theft (Last accessed: August 28, 2014).

4

parties also obtained documents subpoenaed from non-party IBM. Legg filed a motion to compel that was granted. [ECF 33, ECF 44]. The parties briefed other discovery motions as well, including Spirit's motion to reconsider the order granting Legg's motion to compel [ECF 51], Spirit's motion to compel certain discovery [ECF 69], and a motion to quash subpoenas [ECF 86]. The parties also took a number of depositions, including a deposition of non-party IBM in Toronto, Canada.

On December 31, 2014, Plaintiff Legg filed his amended motion for class certification. [ECF 29]. This motion was fully briefed and, on June 10, 2015, the Court granted the motion, certifying the Class. [ECF 64]. The parties also litigated Spirit's request to amend its answer to the complaint [ECF 56], Spirit's motion to reconsider the denial of that motion [ECF 79], Spirit's motion to consolidate the Legg and Rosen actions [ECF 80], Spirit's motion to stay the case pending the Supreme Court's resolution of a different case Spirit claimed could impact these cases [ECF 81], and Spirit's insurer's motion to intervene and stay proceedings. [ECF 98, 108].

During the pendency of Plaintiff's class certification motion, on March 5, 2015, the parties attended an initial mediation before a third party mediator, Judge Wayne R. Andersen (ret.).[9] The parties did not reach a settlement at that time, but discussed matters which would advance their ability to engage in meaningful settlement negotiations. After that, the negotiations continued informally between the parties as the case progressed.

On August 19, 2015, less than a month before discovery closed, the parties attended a second full-day mediation before Mark Buckstein, this time at Spirit's counsel's office.[10] As a result of that mediation, the parties reached a preliminary settlement. [ECF 110]. After that, the parties spent two months negotiating the final terms of the agreement and drafting the necessary papers attendant to the Settlement. A copy of the settlement agreement is attached as *Appendix 1*.

On October 28, 2015, the Court granted the settlement preliminary approval, and directed that notice be sent to the class members. However, because Spirit only had names and transaction

---

[9] Judge Andersen is with JAMS, he served as a U.S. District Judge for the Northern District of Illinois for 19 years, and served as a state court trial judge for 7 years. Judge Andersen has also conducted thousands of settlement conferences during his service on both the federal and state judiciary.

[10] Mark Buckstein, Esq. has been with Professional Dispute Resolutions, Inc., an organization engaged in mediation, arbitration and other ADR processes and techniques, since 1999. He serves as its Chairman, and his principal fields are securities, employment, real estate, insurance, commercial and contract, malpractice, intellectual property and class actions. He also conducts training programs and lectures on negotiations and alternative dispute resolution.

information for most class members, *i.e.*, not contact information, Class Counsel had to embark on an extensive campaign to locate the class members. This required more than thirty subpoenas to a variety of companies, including Expedia, Travelocity and similar companies that booked the class members' flights with Spirit, the company that hosted Spirit's customer reservation database, American Express, Discover, the credit card processor that handled the transactions for class members who used Visa and MasterCard cards, and finally Bank of America, Citibank, Chase, Wells Fargo and the other banks that issued those cards. *Appendix 3* (Hilicki Decl.) at ¶11. The campaign also required extensive communications and negotiations with the subpoenaed entities and their counsel, many of whom initially resisted complying or professed to have difficulty complying, as well as motion practice to both facilitate compliance with the subpoenas, and extend time to issue the class notice to accommodate the subpoenaed parties. [ECF Nos. 120, 122, 125, 126, 136, 137]. In the end, notices were mailed to 310,256 class members. *Appendix 2*, ¶4.

## III.   SETTLEMENT TERMS

The Agreement provides that Spirit shall pay 7.5 million dollars ($7,500,000.00). *Appendix 1*, §III.B. Due to the substantial claim rate, a Settlement Class Member who properly and timely made a claim will receive a pro rata share of the net settlement fund, or more than $62.00. Also, this amount may increase (but not decrease) as the class administer is still evaluating claims to confirm how many were filed by actual class members, and sending letters to persons who submitted claims but are not on the class list, to given them an opportunity to explain why they submitted a claim, *e.g.*, a name change. *Appendix 2*, ¶12.[11] In addition to the payments to class members, Spirit also agreed to the following:

**A.   Notice and Settlement Administration.** Spirit agreed to pay the cost of the Notice Plan, including the cost of setting up and maintaining a settlement website to give class members additional information about the settlement and a convenient means to submit a claim, as well as the cost of postage for mailing the notice and settlement payments to class members. The final notice and administration costs are estimated to be $550,000. *Appendix 2* at ¶22.

**B.   Incentive Payment.** Subject to court approval, Spirit agreed to a payment of an

---

[11] The claims administrator still needs to evaluate 26,971 claims. *Id.*, ¶12. If for example, half of those claims turned out to be filed by non-class members (and thus invalid), the per-person recovery would increase to $77 per claimant.

Case 0:14-cv-61978-JIC   Document 146   Entered on FLSD Docket 07/11/2016   Page 15 of 33

Incentive Award to Plaintiffs for their service to the class in an amount not to exceed ten thousand dollars ($10,000.00) each, in addition to any recovery that they are entitled to as a Settlement Class Member. This is well within the range of reasonableness. *See Gevaerts v. TD Bank, N.A.*, 2015 U.S. Dist. LEXIS 150354 at \*25-\*26 (S.D. Fla. Nov. 5, 2015) ($10,000 incentive award each to two sets of plaintiffs), citing *Spicer v. Chi. Bd. of Options Exchange, Inc.*, 844 F.Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving incentive awards ranging from $5,000 to $100,000, and approving $10,000 for each plaintiff); *see also Cooper v. NelNet, Inc.*, 14-cv-314-RBD-DAB, Dkt. 85, p.5, ¶11 (M.D. Fla. Aug. 4, 2015) ($25,000 incentive award).[12]

C.    **Payment of Attorneys' Fees and Expenses.** Subject to Court approval, Spirit agreed that Class Counsel may apply for an award of attorneys' fees in an amount of 33.3% of the settlement fund, or two million, five-hundred thousand dollars ($2,500,000), plus the expenses they incurred in connection with this Action. The mailed notice, website and posted long form notice all informed class members of both the exact dollar amount and percentage that Class Counsel is requesting for fees. As noted above, only one class member objected, but only to the existence of the case, not to the terms of the settlement itself. Also, the lone non-class member "objection" to the fees has been withdrawn, and in any event it is factually and legally deficient as explained in the separate response to objections Plaintiffs are filing.

D.    **Release.** In exchange for the above relief, the release is limited to claims related to or arising out of the claims which were made or could have been made in this Litigation. *Appendix 1* at §II ¶R and §VI.

## IV.    THE NOTICE PROVIDED WAS MORE THAN SUFFICIENT.

Federal Rule 23 requires a court to direct to class members "the best notice that is practicable under the circumstances" describing, among other things, the action, the class certified, and class members' right to exclude themselves. Fed. R. Civ. P. 23(c)(2)(B). Further, before granting final approval to a proposed class settlement, the court must "direct notice in a

---

[12] The Seventh Circuit was recently critical of a $7,500 incentive award as being too small. *Ira Holtzman, C.P.A., & Associates Ltd. v. Turza*, 728 F.3d 682, 690 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1318 (2014) (describing the award as a "disincentive" award); *see also See also* Conte and Newberg, 4 NEWBERG ON CLASS ACTIONS, §11.38 (4th ed.) Indeed, "since without the named plaintiff there can be no class action, such compensation as may be necessary to induce him to participate in the suit could be thought the equivalent of the lawyers' non-legal but essential case specific expenses."

7

reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Finally, the Due Process Clause also guarantees unnamed class members the right to notice of a class settlement. *U.S. v. Alabama*, 271 F. App'x 896, 901 (11th Cir. 2008).

To satisfy these requirements, the notice must be calculated to "apprise class members of the terms of the settlement agreement in a manner that allows class members to make their own determination regarding whether the settlement serves their interests." *Id.* at 901; *see also In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1317 (11th Cir. 2009), *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) ("Notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"), *quoting Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

However, the notice "need not include every material fact or be overly detailed." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (internal quotations omitted). Moreover, neither Rule 23 nor due process requires that all class members receive actual notice. *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012). Instead, to determine whether the notice is sufficient, courts "look solely to the language of the notices and the manner of their distribution." *Alabama*, 271 F. App'x at 901, *quoting Adams v. Southern Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1286 (11th Cir. 2007).

The plan approved by the Court here provided exceptional notice that exceeds Rule 23 and due process requirements. In granting preliminary approval to the notice plan, this Court found: "The Court has considered the Class Notice, attached as Exhibits 2 and 3 to the Agreement, including the proposed forms of notice, Summary Notice, Full Notice, and Settlement Claim Certification Form, and finds that the forms, content, and manner of notice proposed by the Parties and approved herein meet the requirements of due process and Fed. R. Civ. P. 23(c) and (e), are the best notice practicable under the circumstances, constitute sufficient notice to all persons entitled to notice, and satisfy the Constitutional requirements of notice." [ECF 118, ¶5]. These conclusions remain correct as evidenced by the terrific claim rate.

In fact, rather than just comply with the minimum notice requirement, Class Counsel essentially engaged in a second litigation to broaden the notice distribution, spending months subpoenaing class member contact information from travel companies, banks and others who

were at best reluctant to turn over any information, and at worst hostile and uncooperative. *See Appendix 3* (Hilicki Decl.) at ¶11. The result of this effort is seen in the exceptional claim rate.

The Claims Administrator followed the Court-approved notice and claims procedures. It sent notice to every identified class member for which an address was located.[13] *Appendix 2*, at ¶3. It also set up the settlement website as well as the toll-free number for class members to call with any questions or request that a claim form and long form notice be mailed to them. *Appendix 2*, at ¶3. To bolster the notice plan, the Claims Administrator also ran banner ads about the settlement on more than 9,600 websites, including Facebook. Viewers who clicked the ads were taken to the settlement website, where they could view the notice, file a claim, and find answers to any questions about the lawsuit, the settlement or the claims process. *Appendix 2*, §C.

As of June 24, 2016, the website has been visited 58,737 times, with 205,375 page views. *Appendix 2* at ¶17. As of June 24, 2016, the Claims Administrator's toll-free Voice Response Unit has handled a total of 2,319 phone calls from persons seeking information about the case. *Appendix 2* at ¶9. In addition, the CAFA notice of the settlement was sent the U.S., state and other attorneys' general as required. [ECF 119].

Class members had until June 20, 2016, to request exclusion, object, or submit a claim. [ECF 128, p.2, ¶2]. As noted above, an estimated more than 70,000 claims have been filed to date, only one class member requested exclusion, and only one objected (to the case, not the settlement). *Appendix 2* at ¶10, ¶12-¶14. No governmental entity objected in response to the CAFA notice. In short, the notice complies with the court-approved plan, exceeds Rule 23 and Due Process, and fully apprised the class of all material terms, how to obtain additional information and how to exercise their rights. By all accounts, the notice plan was not just adequate; it was a success.

## V.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND THUS IT MERITS FINAL APPROVAL

Judicial and public policy favor the voluntary settlement of complex class action litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren*, 693 F. Supp. at 1054. ("[S]ettlements are

---

[13] Direct mail notice to potential class members, standing alone, is generally sufficient. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) ("where a fully descriptive notice is sent first-class mail to each class member, with an explanation of the right to 'opt out,' [that] satisfies due process.")

highly favored in the law."). With a settlement, the class members are ensured a benefit as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport. Antitrust Litig.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).

Although approval of a settlement is a matter within the Court's discretion, some deference should be given to the consensual decision of the Parties. *See Warren*, 693 F.Supp. at 1054 ("affording great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation."). Ultimately, the Court should approve a class action settlement if it is fair, adequate, and reasonable, and not the product of collusion. *Bennett*, 737 F.2d at 986 (11th Cir. 1984).

When conducting this analysis, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F. Supp.2d 1323, 1329 (S.D. Fla. 2001). In determining whether a settlement is "fair, adequate, and reasonable," the following factors are generally considered:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986. In addition, the Court makes an inquiry into "whether the settlement was procured by collusion among the parties or was the result of arms–length and informed bargaining." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1315 (S.D. Fla. 2005); *see also In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d at 1329 ("In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties.")

Ultimately, "[a] settlement is fair, reasonable and adequate when 'the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'" *In re Checking Acct. Overdraft Litig.*, 830 F.Supp.2d 1330, 1344 (S.D. Fla. 2011) (citation omitted).

Here, the Agreement easily passes both tests, having been the product of arm's length, informed negotiations between the parties with the assistance of neutral mediators, and satisfying each of the Eleventh Circuit's *Bennett* factors.

### A. The Agreement Is the Result of Arm's Length Negotiations between the Parties with the Assistance of Experienced Mediators.

The context in which the Agreement was reached confirms that it was the result of arms-length and informed negotiations among the parties, and not collusion.

To start, the Agreement only came about after class certification was granted, and after the extensive discovery and motion practice set out above. The work put into the case gave experienced counsel ample information about the case facts and the chance of success, to enable them to evaluate the terms of any proposed agreement, and thus ensure a fair compromise. *See Appendix 3* Hilicki Decl. at ¶7; *Appendix 4* Owens Decl., ¶32; and *Appendix 5* Lyons Decl. at ¶7. Even then, the parties conducted two separate in-person mediation sessions by highly experienced and well-respected neutrals, Judge Andersen (ret.) and Mark Buckstein. This further demonstrates there was no collusion. *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of …. a highly experienced mediator, lends further support to the absence of collusion."); *see also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1340 (S.D. Fla. 2011) (no collusion where settlement reached by capable and experienced counsel and with the assistance of a well-qualified and experienced mediator).

As such, it is clear the Agreement is the result of arms-length and informed negotiation between the parties, not collusion, and thus the Court should not hesitate to approve it.

### B. The Settlement Meets Each of the Eleventh Circuit's *Bennett* Factors.

In addition to being the product of arm's length negotiations, the Agreement also satisfies each of the *Bennett* factors. It is important to keep in mind that "[i]n evaluating these considerations, the district court should not try the case on the merits." *Perez v. Asurion Co.*, 501 F. Supp.2d 1360, 1380 (S.D. Fla. 2007) (citation omitted). "Rather, the court 'must rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.'" *Id.* Here, as explained below, each of the *Bennett* factors weighs in favor of granting final approval.

#### 1. Likelihood of Success at Trial.

The first *Bennett* factor to consider in determining whether a settlement is fair, reasonable, and adequate is the likelihood of success at trial. "The likelihood of success on the merits is weighed against the amount and form of relief contained in the settlement." *Lipuma*, 406 F.

11

Supp.2d at 1319. Where success at trial is not certain for a plaintiff, this factor weighs in favor of approving the settlement. *See Newman v. Sun Capital Corp.*, No. 09-cv-445, 2012 U.S. Dist. LEXIS 121843 at *30 (M.D. Fla. Aug. 28, 2012).

Here, Plaintiffs' and the class members' ultimate success at trial is far from guaranteed. Class Counsel is confident in the strength of the claims alleged. Nevertheless, litigation is inherently unpredictable and the outcome of a trial is unpredictable.

Indeed, Plaintiffs and the class members face significant risks in proceeding toward trial, including the possibility that the case may be defeated at the summary judgment stage, and of course the possibility that the jury concludes that Spirit's alleged violation of FACTA was not willful. Spirit is represented by competent and formidable trial counsel.

Also, some courts view awards of aggregate, statutory damages with skepticism and would reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.,* No. 09 C 910, 2011 U.S. Dist. LEXIS 48323, at *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation—would not violate Defendant's due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature.") Spirit raised this argument which, if ultimately accepted, could considerably affect the class's potential recovery. The Court found the argument premature at the class certification stage [ECF 64, p.12], leaving the issue open to be revisited on the merits.[14] Finally, Plaintiffs recognize the expense, duration, and complexity of continued litigation would be substantial and possibly require further briefing on numerous substantive issues, extensive trial preparation, and appeal. *See Appendix 3* Hilicki Decl. at ¶¶12-14; *Appendix 4* Owens Decl. at ¶30; and *Appendix 5* Lyons Decl. at ¶10.

Against the inherent uncertainty raised by these issues is the substantial and concrete cash relief the class members will receive under the Agreement. Given the high value of this settlement – believed to be the second largest cash FACTA settlement in history – Plaintiffs expected no significant opposition to it by the class and in fact, Plaintiffs were correct. In the end, when the

---

[14] *But see Phillips Randolph Enters., LLC v. Rice Fields*, 2007 U.S. Dist. LEXIS 3027 at *7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

strengths of the claims are weighed against the legal and factual obstacles they face, and the complexity of class action practice, there should be no doubt that this settlement is in the class members' best interests.[15] As such, the first *Bennett* factor weighs in favor of approving it.

### 2. Range of Possible Recovery and the Point at which the Agreement Is Fair, Reasonable, and Adequate

Analysis of the second and third *Bennett* factors – the range of possible recovery and the point in that range at which a settlement is fair, adequate and reasonable – are often combined. *In re Sunbeam*, 176 F. Supp.2d at 1331. As in most litigation, "[t]he range of potential recovery 'spans from a finding of non-liability through varying levels of injunctive relief,' in addition to any monetary benefits to class members." *Figueroa v. Sharper Image Co.*, 517 F. Supp.2d 1292, 1326 (S.D. Fla. 2007), *quoting Lipuma*, 406 F. Supp.2d at 1322. However, "the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Figueroa*, 517 F. Supp.2d at 1326.

The monetary relief secured on behalf of the class is substantial. It is believed to be the second largest aggregate recovery for a class action alleging FACTA violations. Each class member who submitted a valid claim will receive at least $62.00 in cash. This is plainly fair, reasonable and adequate, as the relief here easily surpasses the potential per-class-member benefit conferred in other FACTA class settlements that received final approval. *See, e.g.*, *Katz v. ABP Corp.*, 2014 U.S. Dist. LEXIS 141223 at *2 (E.D.N.Y. Oct. 3, 2014) (FACTA class settlement that gives class members a choice to make a claim for $9.60 in cash or a coupon for $15 off of future purchases from defendant); *Hanlon v. Palace Entm't Holdings*, LLC, 2012 U.S. Dist. LEXIS 364 at *14-*15 (W.D. Pa. Jan. 3, 2012) (FACTA class settlement that provides the class with admission tickets to defendant's amusement park); *Todd v. Retail Concepts Inc.*, 2008 U.S. Dist. LEXIS 117126 at *16 (M.D. Tenn. Aug. 22, 2008) (FACTA class settlement providing a $15 credit on class members' next purchase of $125 or more); *Palamara v. Kings Family Restaurants*, 2008 U.S. Dist. LEXIS 33087 at *9-*10 (W.D. Pa. Apr. 22, 2008) (FACTA class settlement providing vouchers worth an average of $4.38 each to get appetizers, soup, desserts and other small menu items when visiting the defendant's restaurants in future); *Long v. Joseph-Beth Grp., Inc.,* No. 07-cv-00443 (W.D. Pa. May 5, 2007) (A class of 400,000 members could

---

[15] *See Appendix 3* Hilicki Decl. at ¶16; *Appendix 4* Owens Decl. at ¶33; Appendix 5 Lyons Decl. at ¶13.

claim a $5 voucher.)[16] Once again, this settlement is on par with the *Lab* FACTA settlement, which had a class that was almost twice as large, and this settlement provides a far greater recovery than the previous largest settlement from *Lumas v. Sw. Airlines Co.* ($1.8 million to settle between 880,000 and 2,200,000 transactions). As such, the settlement exceeds the range of what is fair, reasonable and adequate. The second and third *Bennett* factors are met.

### 3.    The Complexity and Expense of Further Litigation

The next factor is the complexity and expense of further litigation. In evaluating this factor, courts "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Lipuma*, 406 F. Supp.2d at 1323 (citation omitted). "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigation." *Perez*, 501 F. Supp.2d at 1381, *quoting Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 543, 543 (S.D. Fla. 1988).

This factor favors approval of the Agreement because the expense and complexity of further litigation would be substantial. Further litigation would include potential cross motions for summary judgment, additional pretrial motion practice, preparing the final pretrial order, conducting the final pretrial conference, and conducting a trial. Given the stakes, an appeal is likely regardless of which party wins. Moreover, continued litigation delays the case's resolution, imposes additional substantial expense on both sides, and consumes substantial additional judicial resources. When, as here, additional costs and delay are likely to be incurred absent a settlement, "it [is] proper to take the bird in the hand instead of a prospective flock in the bush." *Lipuma*, 406 F. Supp.2d at 1323, *quoting In re Shell Oil Refinery,* 155 F.R.D. 552, 560 (E.D. La. 1993); *see also Perez*, 501 F.Supp.2d at 1381 ("With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear.") In sum, the complexity, expense, and duration of remaining litigation favors the approval of the Agreement.

### 4.    Substance and Amount of Opposition to Agreement

The next *Bennett* factor is the substance and amount of opposition to the Agreement.

---

[16] Although FACTA provides a potential recovery of $100 to $1,000 *if* the violation is willful, this does not take into consideration the risk of losing on the merits, the risk of losing a due process challenge to the aggregate statutory damages award or the risk of losing class certification. Factoring in these risks necessitates a discounted recovery.

Here, out of about 370,000 class members, only one filed an objection (a philosophical objection to the case, not the settlement), and only one sought exclusion. *Appendix 2* at ¶10, ¶14. These facts, combined with the high claim rate by the rest of the class, shows that this factor weighs fully in support of granting final approval. *See Lipuma*, 406 F.Supp.2d at 1324 ("a low percentage of objections points to the reasonableness of a proposed settlement and supports its approval."); *Allapattah Servs., Inc. v. Exxon Corp.*, No. 91-cv-986, 2006 U.S. Dist. LEXIS 88347 at *44 (S.D. Fla. Apr. 7, 2006) ("I infer from [the] absence of a significant number of objections that the majority of the Class found [the settlement agreement] reasonable and fair."); *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1021 (N.D. Ill. 2000) (fact that more than "99.9% of class members have neither opted out nor filed objections is strong circumstantial evidence in favor of the settlement"), *aff'd.*, 267 F.3d 743 (7th Cir. 2001)); 2 McLaughlin on Class Actions §6:10 (10th ed.) ("Courts have generally assumed that 'silence constitutes tacit consent to the agreement,' so that the absence of objectors or receipt of a relatively small number of objections and opt-outs supports the conclusion that the settlement is adequate.") (citation omitted).

### 5.     Stage of Proceedings at which Settlement Achieved

The final *Bennett* factor looks to the stage of proceedings at which the settlement was achieved. This factor is used "to ensure that the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation." *Perez*, 501 F. Supp.2d at 1383; *see also Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-cv-14017, 2002 U.S. Dist. LEXIS 28975 at *21 (S.D. Fla. May 7, 2002) ("Because the parties have expended much effort in analyzing the issues, this Court should find that the parties are at a proper juncture with sufficient information to settle this action."); *In re Sunbeam*, 176 F. Supp.2d at 1332 ("Obviously, the case had progressed to a point where each side was well aware of the other side's position and the merits thereof.  This factor weighs in favor of the Court finding the proposed settlement to be fair, adequate, and reasonable.")

Here, the Agreement was not reached until after written discovery, the review of more than 175,000 pages of documents, depositions (including a non-party deposition in Canada), a ruling on class certification, a ruling on a motion to compel, multiple additional discovery and procedural motions and rulings, the near completion of discovery, and two separate mediations before professional neutrals. Class Counsel ensured they had sufficient information about the allegations

of the complaint, the class size, and the range of the class's potential damages. Hence, there should be no question that, by the time the Agreement was reached, Class Counsel had enough information to evaluate the strength of the class claims and weigh the benefits of the Agreement against continued litigation. In sum, the *Bennett* factors weigh in favor of final approval.

## VI.   THE ATTORNEYS' FEE AND EXPENSES REQUESTED ARE REASONABLE

In the Eleventh Circuit, "it is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained." *In re Checking Acct. Overdraft Litig.*, 830 F. Supp.2d at 1358, *citing Camden I Condo Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) and *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

Like the relief to be provided to the class, the parties' subsequent agreement on the attorneys' fee and expense award stems from the last mediation with Mr. Buckstein. While it is within the Court's discretion to determine the reasonableness of the proposed award, negotiated attorneys' fee and expense awards in class action settlements are strongly encouraged. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee."); *see also Cohn v. Nelson*, 375 F.Supp.2d 844, 861 (E.D. Mo. 2005) ("where, as here, the parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference.")

The reasonableness of the fee sought is confirmed by examining it both as a percentage of the total settlement, as well as the various factors established for evaluating attorney fee requests (including the "Johnson" or "Camden I" factors). *Camden I Condo. Ass'n*, 946 F.2d at 774-775.

### A.    The Fee Amount Is Reasonable as a Percentage of the Total Settlement

"In the Eleventh Circuit, 'attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.'" *Hamilton v. SunTrust Mortg., Inc.*, No. 13-60749-CIV-COHN, 2014 U.S. Dist. LEXIS 154762 at *20-*21 (S.D. Fla. Oct. 24, 2014), *quoting Camden I Condo*, 946 F.2d at 774. Also, as this Court specifically noted, "federal district courts across the country have, in the class action settlement context, routinely awarded class counsel fees in excess of the 25 percent 'benchmark,' even in so-called 'mega-fund' cases." *Hamilton*, 2014 U.S. Dist. LEXIS 154762 at *21 (collecting cases);

16

*see also Camden I*, 946 F.2d at 774-775 ("an upper limit is 50%"); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295–96 (11th Cir.1999) (affirmed award of 33.3%). *See, e.g., Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (collecting cases and concluding that 33% is consistent with the market rate in class actions); *Gevaerts* 2015 U.S. Dist. LEXIS 150354 at *29 (discussing the range of reasonableness for fee requests)[17].

The mediated fee and expense award here easily falls within the range of reasonableness. The mailed notice, long form notice and website all specifically set out both the amount and corresponding percentage of the attorney fees that were to be requested, which are "not to exceed one third of the fund, which is $2,500,000, plus expenses." *Appendix 1*, at *Exhibits 2, 3*. The notice also advised that counsel would seek reimbursement of their expenses, and here Class Counsel seeks $18,245.24 in out-of-pocket expenses incurred in prosecuting this case, which consist of deposition costs, mediation fees, and travel costs to depositions, mediations and related matter. *See Appendix 3* Hilicki Decl. at ¶17; *Appendix 4* Owens Decl. at ¶34; and *Appendix 5* Lyons Decl. at ¶15. None of the expenses for which reimbursement is sought are for overhead-type items such as copying, legal research, telephone calls, meals, etc.

The requested fee and expense amount is reasonable given the substantial monetary recovery alone, but the reasonableness of the request is further enhanced by the non-monetary benefits this case conferred upon the class. *See Faught*, 668 F.3d at 1244-1245 (fee and cost award reasonable in part because "the $1.5 million payment is designed to compensate the class counsel for the non-monetary benefits they achieved for the class.") Specifically, in direct response to these lawsuits, Spirit reprogrammed its airport kiosk system nationwide to stop printing more than the last five digits of credit and debit card account numbers on transaction receipts.

Indeed, the Eleventh Circuit affirmed the approval of a $5.68 million attorneys' fee award

---

[17] *See Checking Account Overdraft Litig.* 830 F. Supp.2d 1330, 1344 (S.D. Fla. 2011)("Numerous recent decisions within this Circuit have awarded attorneys' fees up to (and at times in excess of) 30 percent. See Allapattah Servs., Inc. v. Exxon Corp., 454 F. Supp. 2d 1185 (S.D. Fla. 2006) (awarding fees of 31 1/3 % of $1.06 billion); In re: Terazosin Hydrochloride Antitrust Litigation, 99-1317-MDL-Seitz, 2005 U.S. Dist. LEXIS 43082 (S.D. Fla. April 19, 2005) (awarding fees of 33 1/3 % of settlement of over $30 million); In re: Managed Care Litig. v. Aetna, MDL No. 1334, 2003 U.S. Dist. LEXIS 27228, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement of $100 million; Gutter v. E.I. Dupont De Nemours & Co., 95-2152-Civ-Gold, 2003 U.S. Dist. LEXIS 27238 (S.D. Fla. May 30, 2003) (awarding fees of 33 1/3 % of settlement of $77.5 million); Waters v. Int'l Precious Metals Corp., 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33 1/3 % of settlement of $40 million); see also Decl. of Hon. Thomas E. Scott [DE # 1885-10], ¶ 25.")

17

when the class only claimed $344,850 and there was nonmonetary relief. *Poertner v. Gillette Co.*, 618 F. App'x 624, 631 (11th Cir. 2015) (unpub.). The Eleventh Circuit looked at the amount made available, the value of all of the factors and held:

> While no published opinion of ours extends Camden I's percentage-of-recovery rule to claims-made settlements, no principled reason counsels against doing so. For, as one learned treatise aptly illustrates, properly understood "[a] claims-made settlement is . . . the functional equivalent of a common fund settlement where the unclaimed funds revert to the defendant"; indeed, the two types of settlements are "fully synonymous." 4 Rubenstein, *Newberg on Class Actions* § 13:7.

*Id.* at 628 fn. 2. The Eleventh's Circuit's decision in *Poertner* is in accord with *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). In *Boeing*, the Supreme Court rejected the notion that the fee award should be limited to the amount of funds claimed by the class members.[18] Instead, the Supreme Court held that fees should be based on the amount made available:

> Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel. Unless absentees contribute to the payment of attorney's fees incurred on their behalves, they will pay nothing for the creation of the fund and their representatives may bear additional costs. The judgment entered by the District Court and affirmed by the Court of Appeals rectifies this inequity by requiring every member of the class to share attorney's fees to the same extent that he can share the recovery Since the benefits of the class recovery have been "traced with some accuracy" and the costs of recovery have been "shifted with some exactitude to those benefiting."

*Id* at 480-81. This Court has echoed this principle. *Hamilton*, No. 13-60749-CIV-COHN, 2014 U.S. Dist. LEXIS 154762 at *19 ("A settlement's fairness is judged by the opportunity created for the class members, not by how many submit claims.").

In this case, not a penny goes back to Spirit. In other words, the entire net settlement fund will be distributed to class members who make claims, and so regardless of the number of claims (which in this case, were quite high), counsel's fees are a percentage of the true amount being paid out. As such, Plaintiffs' fee and expense request is reasonable, especially in light of the fact that Plaintiffs are not also seeking a percentage of the value nonmonetary relief, even though the Eleventh Circuit would allow it.

Finally, and perhaps most significantly, not a single class member objected to counsel's

---

[18] "Boeing appealed only one provision of the judgment. It claimed that attorney's fees could not be awarded from the unclaimed portion of the judgment fund for at least two reasons. First, the equitable doctrine that allows the assessment of attorney's fees against a common fund created by the lawyers' efforts was inapposite because the money in the judgment fund would not benefit those class members who failed to claim it." *Id* at 480.

18

fee and expense request. As shown in Plaintiff's separate response to the "objections," the only fee objection was made by a professional objector on behalf of his non-class member daughter, who lacks standing to object and, in any event, only offered factually and legally inaccurate boilerplate. As a percentage of the settlement, the fees and expenses sought are reasonable.

**B.**      **The Fee and Expense Amount Is Also Reasonable Under the *Johnson/Camden I* Factors.**

In cases in which the fees sought exceed 25% of the settlement, the Eleventh Circuit endorses using the factors articulated *Johnson v. Georgia Highway Expr., Inc*., 488 F.2d 714 (5th Cir. 1974), to confirm the reasonableness of fee request. *See Camden I Condo. Ass'n*, 946 F.2d at 775. The *Johnson/Camden I* factors are (1) the time and labor required;[19] (2) the novelty and difficulty of the issues; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is contingent; (7) the time limitations imposed; (8) the amount involved and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Camden I*, 946 F.2d at 772, n.3. These factors confirm the reasonableness of counsel's fee and expense request.

**1.      The Time and Labor Required, Preclusion from Other Employment and the Time Limits Imposed Justify the Cost and Fee Amount.**

The first, fourth, and seventh *Johnson/Camden I* factors – the time and labor, preclusion of other employment, and time limitations imposed, respectively – are interrelated inquires and each support the reasonableness of the request. This case has been pending since 2014 and Class Counsel had to engage in substantial litigation against a well-heeled defendant and sophisticated defense counsel to reach the Settlement.

The work was extensive. As noted above, counsel reviewed more than 175,000 pages of documents, conducted depositions and non-party discovery, and engaged in contested class certification proceedings and substantial additional motion practice. Even after the settlement was reached, counsel had to spend months negotiating with thirty travel companies, banks, and others to identify class members. All of the work necessitated by this case diverted the time and

---

[19] The Eleventh Circuit made clear in *Camden I* that percentage of the fund is the exclusive method for awarding fees in common fund class actions ... "[and] [t]he lodestar approach should not be imposed through the back door via a 'cross-check.'" *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1362.

resources from other matters. *See Yates v. Mobile Cnty. Pers. Bd.*, 719 F.2d 1530, 1535 (11th Cir. 1983) (The expenditure of time necessarily had some adverse impact upon the ability of counsel for plaintiff to accept other work, and this factor should raise the amount of the award.); *see also Stalcup v. Schlage Lock Co.*, 505 F. Supp.2d 704, 708 (D. Colo. 2007) (noting that "the *Johnson* court concluded that priority work that delays a lawyer's other work is entitled to a premium.")

Finally, and perhaps most tellingly, no class member objected to class counsel's effort or the proposed fee and expense award, even though the notice explicitly told the class of both the percentage and the fee amount sought. Even if the single non-class member "objector" had standing to weigh in, the self-serving opinion of her professional-objector lawyer (and father) does not and cannot justify upending a fee and expense request that no class member objected to, and that the more than 70,000 persons who submitted a claim support. *See, e.g., Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) (affirming final approval where 13% of the class submitted written objections); *In re Southwest Airlines Voucher Litig.*, No. 11 C 8176, 2013 U.S. Dist. LEXIS 120735, at *21 (N.D. Ill. Dec. 6, 2013) (the "low level of opposition" amounting to 0.01% of the class "supports the reasonableness of the settlement").

### 2. The Case Involved Difficult Issues; the Risk of Nonpayment and Not Prevailing on the Claims Was High.

The second, sixth, and tenth *Johnson/Camden I* factors—the novelty and difficulty of the issues, whether the fee is contingent, and the "undesirability" of the case, respectively—are also interrelated and support the requested cost and fee award.

This case is novel on several levels. First, it is an open issue as to what evidence it takes to prove that Spirit "willfully" violated the law. In addition, assuming that Plaintiffs prevailed and proved a "willful" violation, the resulting damage award is also a novel issue. Also, as noted above, at least some courts view awards of aggregate, statutory damages with skepticism and consider reducing such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano,* 2011 U.S. Dist. LEXIS 48323, at *13 ("Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature.")[20]

In addition, the ability to recover fees and expenses here has always been contingent on a

---

[20] *But see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027, at *7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

successful outcome. Counsel had to advance the fees and expenses, and risked receiving nothing in return. This is important because "[a] determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007). Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Checking Acc't Overdraft Litig.*, 830 F.Supp.2d at 1364, *quoting In re Sunbeam Sec. Litig.*, 176 F. Supp.2d at 1335. Accordingly, some courts have observed that "[a]ttorneys' risk is perhaps the foremost factor in determining an appropriate fee award." *Francisco v. Numismatic Guar. Corp.*, No. 06-61677, 2007 U.S. Dist. LEXIS 96618 at *35 (S.D. Fla. Jan. 30, 2007), *citing Pinto,* 513 F. Supp.2d at 1339.

The case's novelty and contingent nature also demonstrate its undesirability. Few lawyers will take a case that consumes significant attorney time, involves uncertain questions, and requires them to advance substantial out-of-pocket expenses and risk getting nothing, especially when the prior class settlements under FACTA provided very little incentive to take these cases.

Although Class Counsel achieved an excellent result, that was anything but certain when they took the case. Thus, these factors all weigh in favor of approving the mediated fee and expense amount. *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1364 ("'Undesirability' and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit, not retroactively, with the benefit of hindsight"), citing *Lindy Bros. Bldrs. v. Am. Radiator & Standard Sanitary Corp.* 540 F.2d 102, 112 (3d Cir. 1976).

### 3.  Class Counsel Achieved an Excellent Result for the Settlement Class.

The eighth *Johnson/Camden I* factor looks to the amount involved in the litigation with particular emphasis on the "monetary results achieved" in the case by class counsel. *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp.2d 1185, 1202 (S.D. Fla. 2006).

Here, the parties' mediated Agreement provides a Settlement Fund of $7,500,000, and the class has about 370,000. Once again, each class member who submitted a valid claim will receive at least $62.00 which, as noted above, is far greater than the recoveries in other FACTA settlements that were granted final approval, and is the second largest all cash FACTA settlement. This factor thus weighs strongly in favor of approving the fee and expense amount.

21

### 4.   The Requested Fee is Consistent with Other Consumer Class Settlements.

The fifth and twelfth *Johnson/Camden I* factors, the customary fee and awards in similar cases supports approval. There are plenty consumer class actions, including a recent FACTA case in this District, that awarded one third of the settlement amount for fees, and most were more desirable than this case because the plaintiffs did not have to prove willfulness to recover. *See Legg v. Laboratory Corp. of America*, 14-cv-61543-RLR, Dkt. 227, p.7 (S.D. Fla. Feb. 18, 2016) (FACTA case awarding one-third of gross recovery for attorneys' fees, plus expenses); *De Los Santos v Millward Brown Inc.*, 13-cv-80670-DPG (S.D. Fla. 2015) (awarding one-third of gross recovery for attorneys' fees); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-md-01317-PAS, Dkt. 1557 at 8–10 (S.D. Fla. Apr. 19, 2005) (awarding "33 1/3% of the gross Settlement Fund (plus interest thereon), arising out of the Settlement, before deduction of any costs, expenses, or incentive awards, as their fee award."); *Gutter v. E.I. DuPont De Nemours & Co.*, No. 95-cv-02152-ASG, Dkt. 626 at 7 (S.D. Fla. May 30, 2003) (approving fees of one-third of gross amount of the settlement fund, plus $1.2 million in expenses); *Atkinson v. Wal-Mart Stores, Inc.*, 2011 WL 6846747 at *6 (M.D. Fla. Dec. 29, 2011) (approving fee award of one-third of gross amount of the common fund); *Guarisma v. ADCAHB Medical Coverages, Inc., et al.*, 13-cv-21016, Dkt. 95 (S.D. Fla. June 24, 2015) (awarding one third of the fund, plus costs). Accordingly, this factor also favors the proposed fee and expense award.

### 5.   This Case Required a High Level of Skill.

The remaining *Johnson/Camden I* factors – the skill required to perform the legal services properly, and the experience, reputation, and ability of the attorneys, all confirm that the fees and expenses sought are reasonable.  As shown, Class Counsel achieved a settlement that confers substantial monetary and non-monetary benefits on class despite hard fought litigation against a sophisticated and well-financed defendant represented by top-tier counsel. *See In re Sunbeam Sec. Litig.,* 176 F.Supp.2d at 1334 ("In assessing the quality of representation, courts have also looked to the quality of the opposition the plaintiffs' attorneys faced.")

This outcome was made possible by Class Counsel's extensive experience in litigating class actions of similar size, scope and complexity.  Class Counsel regularly engage in complex litigation involving consumer issues, and they have been appointed class counsel in numerous cases. *See Appendix 4* Owens Decl. at ¶¶18-26; *Appendix 3* Hilicki Decl. at ¶3; Appendix 5

Lyons Decl. at ¶3. Thus, the *Johnson/Camden I* factors confirm the mediated attorneys' fee and expense award is reasonable. Pursuant to Fed. R. Civ. P. 23(h), 52(a) and 54(d)(2), it should be approved.

## VII.    SELECTION OF A CY PRES RECIPIENT AND RESOLVING REQUESTS FOR REIMBURSEMENT BY THIRD PARTIES FOR SUBPOENAS.

The Agreement calls for the distribution of the entire net settlement fund to the Settlement Class Members but, if any payments remain uncashed after 90 days and the total amount of these unclaimed payments is too small to feasibly redistribute to the rest of the class, the Agreement provides that this remainder should be paid to a *cy pres* recipient on behalf of the class. *Appendix 1*, §III.D.i-iii. The parties each proposed a *cy pres* recipient, with Plaintiff proposing U.S. PIRG and Defendant proposing The Sedona Conference, Working Group 11. *Appendix 1*, §V. The order granting preliminary approval states that at the fairness hearing, the Court will hear argument from the parties regarding the selection of the *cy pres* recipient. [ECF 118, p.1, fn.1]. Accordingly, that issue remains to be decided.

An issue that arose in connection with subpoenaing more than thirty companies to locate class member contact information is that some subpoena recipients have asked for reimbursement for expenses they allegedly incurred in connection with responding to the subpoenas. The list of entities requesting a payment, and the amount requested, is as follows:

| Bank | Hours Billed | Rate Billed | Other Charges | Total Demanded |
|------|-------------|-------------|---------------|----------------|
| AMEX | 424.47 | $22/hr | $5227.30 | $14,568.47 |
| Suntrust | N/A | N/A | N/A | $100.00 |
| US Bank | 6.5 | $50/hr | N/A | $325.00 |
| Fifth Third | 7.5 | $20/hr | $16.15 | $166.15 |
| Bank of America | N/A | N/A | N/A | $7,000.00 |

Because these charges (if allowed) represent additional settlement administration costs that would affect the funds available to the class, Class Counsel hereby submits them for  the Court's review, and Class Counsel hereby recommends they be approved with three exceptions. First, American Express's request (totaling more than $14,000) appears grossly excessive. Second, Bank of America's request for $7,000 in attorneys' fees, in addition to appearing excessive, is inappropriate because Federal Rule 45 does not provide for reimbursement of attorneys' fees. Third, the hourly rate requested by US Bank ($50/hour) should be reduced to $22

per hour because the rate is excessive and that same bank agreed to accept $22/hr. to do the same work in connection with a different FACTA case pending in this District for which notice was just issued, *Muransky v. Godiva Chocolatier, Inc.*, 15-cv-60716-WPD (S.D. Fla.).

Class Counsel notified American Express, Bank of America and U.S. Bank that their requests are being put before the Court, and that Class Counsel do not support them.

## VIII.   CONCLUSION

This Agreement provides substantial and immediate cash benefits for the Class, it is the result of arm's length, informed negotiations with the assistance of experienced mediators, it satisfies each of the six *Bennett* factors, and class counsel's fee and expense is both a reasonable percentage of the Settlement and it satisfies the *Johnson/Camden I* factors. Both the settlement and counsel's fee and expense request are fair, reasonable and adequate under Rule 23, and thus Plaintiff respectfully requests that this Court enter an order granting them final approval. A draft Final Approval Order is attached as *Appendix 6.*

Dated: July 11, 2016.

Respectfully Submitted

*/s/ Scott D. Owens*
SCOTT D. OWENS, Esq.
3800 S. Ocean Drive, Ste. 235.
Hollywood, FL 33019
Tel: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com

Michael S. Hilicki (*pro hac vice*)
Keogh Law, LTD.
55 W. Monroe St., Ste. 3390
Chicago, Il 60603
312.374.3402 (Direct)
312.726.1092 (Main)
312.726.1093 (Fax)
MHilicki@KeoghLaw.com
www.KeoghLaw.com

Thomas J. Lyons, Jr.
Consumer Justice Center, P.A.
367 Commerce Court
Vadnais Heights, MN 55127

24

Tel: (651) 770-9707
Fax:(651) 704-0907
tommy@consumerjusticecenter.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that July 11, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this July 11, 2016, in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: */s/ Scott D. Owens*
Scott D. Owens, Esq.

25